William **ETHRIDGE** et al., Plaintiffs,

v.

James A. **RHODES**, Governor et al.,
Defendants.

Civ. A. 67–53.

United States District Court
S. D. Ohio, E. D.
May 17, 1967.

William J. Davis, Columbus, Ohio, Lewis Steel, New York City, for plaintiffs.

Robert Owen, Asst. Atty. Gen., Washington, D. C., Robert M. Draper, U. S. Atty., Columbus, Ohio, for John Gardner, Secretary, U. S. Dept. of Health, Education and Welfare.

William Hoiles, Lawrence Braun, Asst. Attys. Gen., Columbus, Ohio, for James A. Rhodes, Governor of Ohio, Alfred Gienow, Director, Ohio Dept. of Public Works, and John D. Herbert, Treasurer of Ohio.

## OPINION AND ORDER

KINNEARY, District Judge.

This is a class action for declaratory and injunctive relief brought by plaintiffs, William Ethridge and Jerome Welch, on their behalf, and on behalf of all others similarly situated, against defendants, James A. Rhodes, Governor of the State of Ohio, Alfred Gienow, Director of the Ohio Department of Public Works, and John D. Herbert, Treasurer of the State of Ohio. The jurisdiction of this action is asserted under the Fourteenth Amendment to the Constitution of the United States, Title 28, United States Code, Sections 1331, 1343(3) and 2201, and Title 42, United States Code, Sections 1981 and 1983.

The Amended Complaint alleges that defendants, as duly elected and appointed officials of the State of Ohio, are about to enter into contracts for the construction of the Medical Basic Sciences Building on the campus of The Ohio State University, at Columbus. Plaintiffs

seek to enjoin the State of Ohio from entering into such contracts on the ground that such action will be a deprivation, under color of state law, of their privileges and immunities as citizens of the United States as secured to them by the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States and Title 42, United States Code, Sections 1981 and 1983. It is charged that this activity violates these provisions inasmuch as it represents a continuation of state participation in a pattern of discrimination against plaintiffs, and the class they represent, in access to job opportunities on construction projects financed by federal and state funds, solely on the basis of their race.

The determination of the request for permanent injunctive and declaratory relief has been considered on plaintiffs' Complaint and Amended Complaint, plaintiffs' memorandum in support of the Court's jurisdiction, defendants' memoranda in support of their motions to dismiss, plaintiffs' memoranda in opposition to these motions, and the testimony elicited, exhibits introduced and oral argument presented by counsel for the respective parties at the hearing on plaintiffs' motion for a preliminary injunction held in open court on March 20, 1967, and the final hearing on the merits of the case held in open court on May 1, 1967.

Plaintiff, William Ethridge, has been employed for the past fourteen and one-half years as an aircraft electrician by North American Aviation, Inc., Columbus, Ohio. He has received instruction in electronics in both civilian and military schools, and his present employment involves the installation of electrical equipment and the reading of blueprints dealing with all phases of electrical work. Ethridge has also done some part-time work in the areas of commercial and residential wiring.

This plaintiff has made repeated attempts to gain admission to Local 683, International Brotherhood of Electrical Workers. He has been unable to gain admission because the two union officials, whom he has been told he must contact, have been "out" each time he sought to contact them. He has been unable to acquire an application form for admission to this union because he has been told that the application form must be notarized by one of the union officials who were consistently unavailable. His attempts to secure employment directly with construction contractors have been met with the answer that they do all of their hiring through the union.

Plaintiff, Jerome Welch, a college graduate, is presently employed as a high lift and bulldozer operator by Craig and Sons, Columbus, Ohio. He received instruction in heavy equipment operation and obtained a diploma in that field from the Interstate School, Muncie, Indiana.

This plaintiff's attempts to gain admission to Local 18, International Union of Operating Engineers, has met with doubtful results. While he has been able to obtain a "work permit," contractors have told him that before he can be employed he must present a "book" to signify that he is a fully pledged member of the union. The union officials whom Welch has to see in order to gain full membership in the union have also been "out" on every occasion that he has attempted to contact them.

Bids from contractors were received by the State of Ohio for the construction of the Medical Basic Sciences Building, and after review, contracts were sent to at least four contractors for their signatures. While these contracts have been signed and returned by the contractors and have not been signed by state officials, a declaration of intention to sign them has been made by state officials.

At least one of the contractors who has signed such a contract refused to submit a "responsive bid," that is, one containing the following assurance in compliance with the antidiscrimination provisions of the defendant Governor's execu-

tive order dealing with construction contracts:

## ASSURANCE

The undersigned hiring source, in response to the Executive Order issued by Governor James A. Rhodes on June 15, 1966, as amended December 30, 1966, hereby gives its assurance to ———————— as follows:

(1) Admission to the full referral facilities of this hiring source, both as to apprentices and journeymen, is open on equal terms to all qualified persons without discrimination based on race, color, religion, national origin or ancestry.

(2) (a) From July 1, 1966, through December 31, 1966, the apprenticeship program of this hiring source will select all qualified applicants for apprenticeship training without regard to race, color, religion, national origin or ancestry.

(b) From January 1, 1967 through December 31, 1967, this hiring source will comply with each legally imposed requirement of clause (5) (b) of the Governor's Executive Order dated June 15, 1966, as amended December 30, 1966.

(c) After January 1, 1968, this hiring source will comply with every legally imposed requirement of clause (5) (c) of the said Governor's Executive Order.

Clause 5 of the Executive Order reads as follows:

(5) He and his subcontractors have received assurance in writing (*in the form appended hereto as Appendix B*) from each hiring source, including labor unions (which assurance, where appropriate, was authorized by vote of its membership) that

(a) Commencing July 1, 1966, and continuing through December 31, 1966, said hiring source's apprenticeship program will select all qualified applicants for apprenticeship training without regard to race, color, religion, national origin or ancestry.

(b) Commencing January 1, 1967, and continuing through December 31, 1967, said hiring source will have in its apprentice group and refer for employment without discrimination, both whites and non-whites (*including negroes*) or in the alternative, said hiring source shall be deemed to have waived any right to be a recruitment source with respect to every twentieth employee hired and shall likewise be deemed to have consented that every twentieth employee of the craft referred by said hiring source, *counting both apprentices and journeymen*, may be recruited from another source *for any employment derived from such bidder's bid, pledges and commitments, and report of assurances received.*

(c) After January 1, 1968, said hiring source will have in its apprentice and journeymen groups, and refer for employment without discrimination, both whites and non-whites (*including negroes*) or in the alternative, it shall be deemed to have waived its right to be a recruitment source for every fifteenth employee hired and shall likewise be deemed to have consented that every fifteenth employee of the craft referred by said hiring source, *counting both apprentices and journeymen*, may be recruited from another source *for any employment derived from such bidder's bid, pledges and commitments, and report of assurances received.*

Upon discovering that no responsive bids were submitted in the category of heating, ventilating and air conditioning, defendant Gienow requested and received from defendant Rhodes a waiver of application of the assurances requirement to this contract.

 In order for plaintiffs to prevail in their contention that this Court has jurisdiction of this action under the Fourteenth Amendment, it is incumbent

on plaintiffs to prove that there is "state action" resulting in a denial of equal protection of the laws—that is, action which results in racial discrimination. The Fourteenth Amendment was aimed at state, rather than individual, abridgment of individual rights. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Simkins v. Moses H. Cone Memorial Hosp., 323 F.2d 959 (4th Cir. 1963). Similarly, in order to prevail on the question of this Court's jurisdiction under Title 42, United States Code, Section 1983, plaintiffs must prove that defendants acted "under color of state law" to deprive a citizen of the United States of rights, privileges, or immunities secured by the Constitution and laws of the United States. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Defendants are aware that a number of unions have not referred Negroes for employment on the construction of other buildings erected by the State of Ohio on the campus of The Ohio State University. Defendants know to a certainty that many of the unions which will be used as labor sources by the proposed contractors on the Medical Basic Sciences Building project do not now have any Negro members. And the defendants also know that union officials responsible for admission to these unions have been persistently "out" or unavailable to Negroes who seek membership in such unions. Thus, the evidence presented establishes defendants' knowledge of a pattern of discrimination against Negroes, solely on the basis of their race, as to admission and referral by certain of the craft unions which will be used as labor sources for this project. There is, in addition, uncontroverted proof that no steps have been taken by the responsible union officials to correct such inequities.

The testimony of J. Parker Garwick, president of Garwick and Ross, the low bidder on the general contract, indicates that his company plans to secure its labor force only through union referrals. Although certain unions which Garwick and Ross plans to use as hiring sources on this project have never before referred Negroes, the Garwick and Ross bid was unqualified—giving the assurance required by the executive order. Garwick and Ross plans to implement its assurance by making requests for Negro workers. If no Negroes are referred, this company intends to take no further steps to assure that its hiring source does not discriminate.

Stephen E. Lance, Ohio State University Constructor and the person designated by the University as the person in charge of the equal employment program, aptly summed up the situation which will inevitably and automatically exist on this project under present plans,—that is, qualified Negroes in certain crafts will not be able to get jobs. Since the contractors will hire only through unions, and a majority of the craft unions do not have Negro members and will not refer non-member Negroes, the contractors will hire only non-Negroes in a majority of the crafts needed to work on this project.

 The Fourteenth Amendment proscription of racial discrimination does not extend to the acts of non-governmental persons such as union officials. Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). However, when a state has become a joint participant in a pattern of racially discriminatory conduct by placing itself in a position of interdependence with private individuals acting in such a manner—that is, the proposed contractors acting under contract with unions that bar Negroes—this constitutes a type of "state action" proscribed by the Fourteenth Amendment. Burton v. Wilmington Parking Authority, supra. Thus, as in the instant suit, where a state through its elected and appointed officials, undertakes to perform essential governmental functions—herein, the construction of facilities for public education—with the aid of private persons, it cannot avoid the responsibilities imposed on it by the Fourteenth Amendment by merely ignoring or failing to perform them. Ibid.

■ Plaintiffs have correctly asserted jurisdiction under § 1983. This statute is intended to allow redress against official representatives of the state who abuse their positions. It was enacted as a means for enforcing the provisions of the Fourteenth Amendment against those who act as officials of the State, whether they act in accordance with their authority or misuse it. Monroe v. Pape, supra.

■■ The officials of the State of Ohio, through the testimony of the defendant, Director of Public Works, have displayed a shocking lack of concern over the realities of this whole situation and the inevitable discrimination that will result from entering into and performing under the proposed contracts with the proposed contractors. This Director testified that non-discrimination is just another provision of the contract, and his best solution for correcting discrimination, if and when it occurs, is to invoke the sanctions of the performance bond. This solution is totally inadequate for the elimination of the pattern of discrimination that has been allowed to exist. Defendants' failure to assure qualified minority workers equal access to job opportunities on public construction projects by acquiescing in the discriminatory practices of contractors and craft unions clearly falls within the proscription of the Fourteenth Amendment, and a cause of action is stated under § 1983. In a venture, such as this one, where the state as a governmental entity becomes a joint participant with private persons, the restrictions of the Fourteenth Amendment apply not only to the actions of the state but also to the acts of its private partners—the contractors—and the state is bound to affirmatively insure compliance with the constitutional provisions. Burton v. Wilmington Parking Authority, supra. Since this section imposes civil liability, proof of a "specific intent to deprive a person of a federal right" is not required as under the criminal civil rights statutes. Monroe v. Pape, supra.

■ We come next to the question of the procedural availability of the injunction remedy in this case. The plaintiffs are here seeking an extraordinary remedy. It must be established that the threatened injury is irreparable and that no other adequate remedy exists. Stated otherwise, it must be proved that plain, complete, practical and efficient means of effecting justice may be obtained only through the prompt administration of an injunction in equity. Local 499, IBEW v. Iowa Power & Light Co., 224 F.Supp. 731 (S.D.Iowa 1964).

■ Defendants assert that the threatened injury is not irreparable and that an injunction is not the only adequate remedy because Title 42, United States Code, Section 2000e–1–15, and Ohio Rev.Code, ch. 4112, provide a remedy for the specific injury set out in the Complaint. It is alleged that through the commissions set up by these statutes and judicial enforcement of their orders, any person found to have been discriminated against could gain access to labor organizations and awarded a back pay differential for the pecuniary damages suffered through the discriminatory exclusions from work on the project. However, it is quite apparent from the evidence presented that the threatened injury is not fully reparable through the utilization of the procedures set out in both the federal and state statutes.

Moreover, while the statutory provisions may serve to redress the pecuniary damage resulting from discrimination, they do not take a single step toward mending the psychological damage to both the party discriminated against and others in the class he represents. It is evident from the testimony of the several sociologists who appeared as witnesses in this case that discrimination in the area of employment stunts the educational and technical potential development of the class subject to such inequities. This Court is also mindful of the evidence submitted by experts in cases dealing with discrimination in other areas of life. Such evidence pointed out that segregation and discrimination not only denote inferiority of the class discriminated against, but also retard the development

of that class, and that in cases in which this type of activity receives the sanction of the government, the impact is even greater. See, e. g., Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, 38 A.L.R.2d 1180 (1954). Injuries of this kind are not subject to any sort of monetary valuation. Thus, the pecuniary awards allowed under the federal and state statutes provide no adequate remedy.

Apart from the question of the reparability of discrimination by money damages, the Director of the Ohio State Civil Rights Commission testified that the Commission has been ineffectual in remedying discrimination in the craft unions. The Director further testified that even with the powers available to the Commission, the case by case approach which must be followed by that body results in too long a delay before any meaningful steps will be made toward eliminating discrimination. In view of the requirement that the state administrative remedy be sought before use of the federal administrative remedy, Title 42, United States Code, Section 2000e-5(b) (See Senate Discussion, June 4, 1964) the delay in administration is compounded. Thus, the federal administrative remedy also lacks any sort of speedy effectiveness.

## ORDER

In accordance with and for the reasons stated in the foregoing Opinion, the Court determines that the named plaintiffs and all other persons similarly situated are threatened with and will suffer irreparable injury if the defendants are not restrained, enjoined and mandated in the particulars contained in the injunctive order made herein, and that they have no other adequate remedy.

It is, therefore, ordered, adjudged and decreed that James A. Rhodes, as Governor of the State of Ohio, John D. Herbert, as Treasurer of the State of Ohio, and Alfred Gienow, as Director of Public Works of the State of Ohio, their successors in office, agents, representatives, and employees be and each of them is hereby restrained and enjoined from:

(1) Entering into the contracts already submitted by defendants to, and on their parts executed by, the construction firms of Garwick and Ross, Huffman-Wolf, States Electric, Gesling Company, and others, for the construction of a building, designated as the Medical Basic Sciences Building, on the campus of The Ohio State University at Columbus, under the proposal and agreements which bind such contracting firms in their intended performance of the said contracts;

(2) Entering into contracts for the construction of said Medical Basic Sciences Building with any persons who are bound by any agreement, or otherwise, to secure their labor force exclusively or primarily from any organization or source that does not supply or refer laborers and craftsmen without regard to race, color, or membership in a labor union;

(3) Entering into contracts for the construction of the said Medical Basic Sciences Building with any persons who are bound by any agreement, or otherwise, with a labor organization, which requires, as a condition of employment, that employees hired by such persons become members of labor organization within a certain number of days after employment, and membership in such labor organizations is not equally available to all persons without regard to race or color.

It is further ordered, adjudged and decreed that:

(1) With respect to the construction of the said Medical Basic Sciences Building, James A. Rhodes, as Governor of the State of Ohio, John D. Herbert, as Treasurer of the State of Ohio, and Alfred Gienow, as Director of Public

Works of the State of Ohio, their successors in office, agents, representatives, and employees may enter into contracts only with persons who will obligate themselves and be legally eligible and prepared actually to secure a labor force only from sources that will reasonably insure equal job opportunities to all qualified persons, including journeymen and apprentice craftsmen and laborers, without regard to race, color, or membership or non-membership in a labor union.

(2) Jurisdiction of all matters related to, connected with, and which may arise out of this Opinion and Order be, and they are hereby, specifically retained by this Court.