Michael Arthur **DONOVAN**, Plaintiff,

v.

Ernest **MOBLEY**, Earl Reinbold, Harley Askew, et al., Defendants.

Civ. No. 67–392.

United States District Court
C. D. California.
Sept. 17, 1968.

Newlan & Shapiro, Los Angeles, Cal., for plaintiff.

Robert G. Cockins and Robert D. Ogle, Santa Monica, Cal, for defendant.

## MEMORANDUM OF DECISION AND ORDER

PREGERSON, District Judge.

The above-entitled action was filed by the plaintiff, Michael Arthur Donovan, on March 16, 1967. It is brought under the Civil Rights Act, 42 U.S.C.A. § 1983 (1964). Jurisdiction is founded in this Court pursuant to 28 U.S.C.A. § 1343(3), (4). Venue is properly established under 28 U.S.C.A. § 1391(b). A Court trial was held on April 11, and April 15, 1968.

The facts, many of which were stipulated to by the parties, are found by the Court to be as follows.

Prior to April 6, 1963 Donovan was a member of the Classified Service of the

City of Santa Monica, California, employed as a part-time, as needed, lifeguard. At all times relevant to this action defendant Earl Reinbold was the Chief of Police of the City of Santa Monica Police Department and defendant Harley L. Askew was a Lieutenant in said department. All other defendants named in the complaint have been dismissed.

Donovan was an outstanding and unusually capable lifeguard. He was aggressive and dependable in the water, having achieved one of the highest records for rescues in the lifeguard service. Donovan's ability as a lifeguard is further reflected by the fact that he was assigned to the most crowded and most dangerous beaches. His ratings on the efficiency reports were always in the highest possible category. Donovan displayed the qualities of a leader and his aggressiveness led him to effect several arrests on the beach. Furthermore, Donovan's attitude toward lifeguarding was exemplary: he considered the lifeguard to be a unique public servant, one who devoted and risked his life to save other lives. Consequently, he felt that life-guarding was the most important thing in his own life. He wanted to become a full-time guard and follow this calling as a career on the beach in Santa Monica where he grew up.

In August 1962 and from time to time thereafter Donovan wrote several articles which appeared in the Santa Monica Independent, a local weekly newspaper. They dealt with various beach activities, some being rather controversial. The articles were of the human interest type and displayed a wry sense of humor. They came to the attention of Askew.

On April 1, 1963 supervision of the Santa Monica lifeguard service was transferred from the Department of Recreation and Parks to the Police Department, with Lieutenant Askew placed in charge. On April 6, 1963 Askew, acting on the advice of his superior, Reinbold, summarily fired (or, as he put it, "refused to hire") Donovan. While As-

kew attempted to justify his action and negate Donovan's fine record with the excuse that he was not a "team" man, it appears to the Court that Donovan was dismissed because he had written the newspaper articles.

Following his firing Donovan spoke with Askew on April 6, 1963. He sought but was never told the reason why he was fired. Although Askew indicated that his decision was irrevocable, Donovan told him he "was willing to do anything to get [his] job back" and offered to cooperate in any way Askew felt was necessary. He promised to stop writing articles, since this was only a hobby, if he could be reinstated. Donovan's efforts were sincere, but they were in vain.

On February 28, 1964 Donovan requested a hearing before the City of Santa Monica Personnel Board to review his discharge. Previously Donovan had contacted an attorney to determine the extent of his legal rights to his job. Public hearings were held before the Personnel Board pursuant to Donovan's request. On April 15, 1964 the Board found that Donovan had been in the Classified Service, that he had been removed from his position on April 6, 1963, that on April 11, 1963 he had requested a written statement of charges from the City pursuant to Section 1110 of the City Charter, and that he had never received said statement nor had one been prepared by the City. The Personnel Board concluded that Section 1110 of the City Charter prohibited the City from introducing any evidence on the merits of Donovan's removal and that the removal was without just cause. The Board then recommended that Donovan be reinstated.

The next day Donovan applied for reinstatement to the captain of the lifeguard service. Reinstatement was refused by Askew acting on the order of Reinbold, who had been advised by the City Attorney for Santa Monica that the Personnel Board's action was not binding. Their refusal to reinstate Donovan was motivated by the fact that he had

written newspaper articles, one of which was printed after he was fired.

■ In order to establish a cause of action under 42 U.S.C.A. § 1983 it is necessary that the conduct complained of be by a person acting under color of state or local law and that such conduct result in the deprivation of rights and privileges secured to the plaintiff by the United States Constitution and laws. The parties have readily agreed, and it clearly appears to the Court, that defendants, Askew and Reinbold, were acting under color of state law. Hence, the issue in this case is essentially whether the defendants' conduct infringed any of Donovan's federally protected rights.

Donovan contends that he suffered a denial of his constitutional rights upon being fired on April 6, 1963 and subsequently upon being refused reinstatement on April 16, 1964. The Court has concluded, as will hereinafter more fully appear, that Donovan was denied these rights on both occasions but that his cause of action on the earlier date is barred by the applicable statute of limitations. Consequently, he is entitled to relief only upon the subsequent cause of action.

Donovan was dismissed on April 6, 1963 primarily because he had written articles in a local newspaper. Two of the articles that Donovan had written prior to his dismissal dealt with the purported use of drugs by surfers. Another was a rather tongue-in-cheek account of endeavors by the local humane department and lifeguards to capture and rid the beaches of stray dogs. A fourth article, which appeared two days before he was fired and just after control of the lifeguard service was transferred to the Police Department, discussed current problems which the lifeguards were having. In this last article Askew was mentioned by name as being in command of the efforts by the Police to improve conditions within and performance of the lifeguard service.

■ The Court concludes that these articles contain nothing which would warrant Donovan's precipitous dismissal by Askew and Reinbold, and that said dismissal therefore violated Donovan's right to freedom of speech under the First Amendment. See Pickering v. Bd. of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Insofar as the statements made by Donovan in the article mentioning Askew can be regarded as being critical of the Police Department, they appear to be a fair comment upon a matter of public concern by a lifeguard, as a citizen. The interest of the State, as an employer, in promoting the efficiency of the public services it performs, through its employees, has not been shown to outweigh Donovan's First Amendment rights. See Pickering v. Bd. of Education, supra, 391 U.S. at 568, 88 S.Ct. 1731. Moreover, the statements cannot be said to be directed towards any person with whom Donovan would normally be in contact during the course of his daily work as a lifeguard; hence, there is presented no serious question of maintaining either discipline by immediate superiors or harmony among coworkers. See Pickering v. Bd. of Education, supra, 391 U.S. at 569–570, 88 S.Ct. 1731. Finally, and perhaps most significantly, the statements made by Donovan in the newspaper articles have neither been shown nor can they be presumed to have had a substantial, deleterious effect upon the performance by Donovan of his duties or upon the regular operation of the lifeguard service itself. See Pickering v. Bd. of Education, supra, 391 U.S. at 572–573, 88 S.Ct. 1731.

The violation of Donovan's right to freedom of speech which occurred upon his being fired gave rise to a claim for relief under 42 U.S.C.A. § 1983 on that date, April 6, 1963. Further claims for relief under § 1983 on both procedural and substantive Due Process grounds are also present; however, they will be discussed infra within the context of the refusal to reinstate Donovan.

■ The complaint in this action was not filed until March 16, 1967. The Civil Rights Act contains no provision limiting the time within which an action

under Section 1983 may be brought, but the Ninth Circuit has said that the applicable period of limitation in a case such as this is that provided by the statutes of California, specifically California Code of Civil Procedure § 338(1) which provides for a three year period. See Smith v. Cremins, 308 F.2d 187, 189, 190, 98 A.L.R.2d 1154 (9th Cir. 1962); Lambert v. Conrad, 308 F.2d 571 (9th Cir. 1962). Accordingly, the claim which arose when Donovan was fired on April 6, 1963 is barred by this three-year statute of limitations.

We turn now to Donovan's second claim for relief under 42 U.S.C.A. § 1983, that which arose when he was refused reinstatement on April 16, 1964, and which is subject to no statute of limitations infirmity. The Santa Monica Personnel Board held hearings to review Donovan's discharge, made findings, concluded that he had been dismissed without just cause, and recommended that he be reinstated. Previously Donovan had requested a statement of charges but none was ever given.

Section 1110 of the Santa Monica City Charter provides that an employee holding a position in the Classified Service, such as Donovan, upon being dismissed shall be entitled to receive a written statement of charges against him upon which such dismissal is based. Section 1110 further provides that if no statement of charges has been made available to him as required such employee may request a hearing by the Personnel Board to review the dismissal. Findings by the Board are to be final. If the Personnel Board concludes that a dismissal was without just cause, Section 1110 provides that a recommendation by it of reinstatement "shall be binding upon the appointing power who forthwith shall order such reinstatement and in such event the conclusions and recommendations of the Personnel Board shall be final and no appeal may be taken therefrom."

■ A more unambiguous directive than this would be difficult to draft. A more flagrant violation than has occurred in the refusal to reinstate Donovan would be equally difficult to imagine. The State had afforded certain employees, such as Donovan, whose job rights are at stake, the procedural due process guarantees to notice of charges and an opportunity to be heard. These guarantees, once afforded, cannot be rendered meaningless by officials who choose to disregard the results obtained under the established system for review.

■ Defendants, Askew and Reinbold, have attempted to insulate themselves from liability by seeking to invoke the protective cloak of the so-called governmental immunity doctrine. Initially the Court would point out that this doctrine should be narrowly confined and sparingly used, for in operation it can become a neat bit of judicial legerdemain, taking away with one hand (by providing a rather double-dealing defense) that which is offered by the other (a cause of action against unconstitutional state action) where so many activities of state officials can loosely be characterized as "discretionary" acts within the scope of their authority. Here, moreover, Askew and Reinbold had no discretion to exercise. The findings, conclusion and recommendation of the Personnel Board were unequivocal; furthermore, they were "final" and "binding" on Askew and Reinbold. But they, nevertheless, arbitrarily and capriciously chose to disregard this mandate and deny to Donovan the right to regain his job, a job from which he was wrongfully discharged in the first place.

This effective denial of procedural due process to Donovan is enough to entitle him to relief under 42 U.S.C.A. § 1983. There are, moreover, two additional grounds of recovery under § 1983 which cannot be overlooked.

■ Defendants have vigorously maintained that their refusal to reinstate Donovan did not deprive him of any federally protected rights. This view is erroneous. Aside from preventing Donovan from immediately pursuing

his career as a lifeguard, there can be no question that the decision not to reinstate Donovan would also substantially preclude him from obtaining similar employment of this somewhat unique nature. The Supreme Court has ruled, in a case wherein the petitioner had contended that he had been denied " 'liberty' and 'property' without 'due process of law' in contravention of the Fifth Amendment" (the "alleged property [being] petitioner's employment; the alleged liberty [being] petitioner's freedom to practice his chosen profession.") that " * * * the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment. [citations omitted] * * *." Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). This right of substantive due process was recently recognized again by the Supreme Court in United States v. Robel, 389 U.S. 258, at 263 and 265 n. 11, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967). When Askew and Reinbold arbitrarily and capriciously refused to reinstate Donovan to his former position they effectively denied him his right to due process of law, a right which is protected against such arbitrary state action by the Fourteenth Amendment.

The Court has disclosed above its finding that Askew and Reinbold refused to reinstate Donovan because he had written articles which appeared in a local newspaper. Some of these articles have already been described in conjunction with the discussion of his dismissal. One further article which was admitted into evidence at trial has yet to be described. This article was written about two months after Donovan was fired. It is clearly critical of the supervision of the lifeguards by the Police Department, implying that the police have been largely responsible, with the help of an informer amongst the lifeguards, for the problems within the lifeguard service. At the time this article was written Donovan was no longer employed as a

lifeguard and, therefore, he was free to exercise his right of fair comment about matters of public concern. Considerations of maintaining and promoting efficient public employment relationships (see above discussion on free speech aspects of Donovan's first cause of action) were thus absent.

Inasmuch as Donovan was denied reinstatement because he had written the newspaper articles, the discussion pertaining to the abridgement of his right to freedom of speech upon his being fired is equally apposite here.

It has been shown that Donovan is entitled to relief under 42 U.S.C.A. § 1983. As reasonable compensation for damages suffered by Donovan as a proximate result of the violations of his federally protected rights the Court awards him the sum of $5,000.00.

It is ordered that judgment be entered accordingly.

It is further ordered that the Clerk of the Court shall this day serve copies of this Memorandum of Decision and Order, by United States mail, upon the attorneys of record for the parties appearing in this cause.