**Michael L. SHAKMAN and Paul M. Lurie, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**The DEMOCRATIC ORGANIZATION OF COOK COUNTY, a corporation, et al., Defendants.**

**No. 69 C 2145.**

United States District Court,
N. D. Illinois, E. D.

Nov. 6, 1969.

Robert Plotkin, C. Richard Johnson, and Roger R. Fross, Chicago, Ill., for plaintiffs.

Raymond F. Simon, Corp. Counsel, Marvin E. Aspen, Asst. Corp. Counsel, Edward V. Hanrahan, State's Atty., and George J. Schaller, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Plaintiffs' Preliminary Motions

### Defendants' Motion to Dismiss

This is a class action which alleges deprivations of freedoms of speech and association as well as due process and equal protection of the law in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution and of certain civil rights statutes, 42 U.S.C. §§ 1983, 1985, 1986, 1988, arising from an alleged political patronage system. Plaintiff Shakman is an independent (not endorsed by any political party) candidate for Delegate to the Illinois Constitutional Convention. Plaintiff Lurie is one of his supporters. Defendants are Democratic party organizations and various officials of those organizations, the City of Chicago, and various officials of the City and of Cook County, Illinois.

In this six count complaint, Counts I and IV are brought by Shakman as a candidate for public office, Counts II and V are brought by both plaintiffs as voters, and Counts III and VI are brought by both plaintiffs as taxpayers. Counts IV, V, and VI differ from Counts I, II, and III respectively in alleging conspiracy to commit the acts complained of in the lower numbered counts. The various counts are also brought on behalf of all others similarly situated. Plaintiffs seek declaratory and injunctive relief plus compensatory and exemplary damages.

■■ All defendants have filed multifaceted motions to dismiss this complaint. Some of the reasons set forth by defendants are without merit. Plain-

tiffs have not inexcusably delayed instituting this action and are not barred by laches. Loverich v. Warner Co., 118 F.2d 690, 693 (3d Cir. 1941). Similarly, the complaint cannot be dismissed because the motion for preliminary injunction was not accompanied by a bond. Under the federal rules, security is not required unless and until the equitable relief is to be granted. Rule 65(c), F.R. Civ.P.; 7 Moore's Federal Practice Ch. 65, ¶ 65.09, at 1656 (1968).

A considerably more serious issue is raised by defendants when they suggest that the subject matter of this action involves a political question which, therefore, renders the lawsuit non-justiciable. The non-justiciability of political questions is a doctrine which extends back to Marbury v. Madison, 1 Cranch (5 U.S.) 137, 164–166 (1803). Further, there can be no doubt that this complaint involves political matters. Plaintiffs have alleged that defendants control and exert coercion over patronage employees, who are defined as those persons employed by Chicago and Cook County governmental entities, hired on the basis of political support and not protected by civil service or otherwise against arbitrary discharge from employment. The complaint further alleges that these employees are required to take time off from their jobs in order to perform political work, for which they are paid with public funds. As a result of this alleged misuse of public funds and personnel, the rights of the Democratic patronage employees are allegedly infringed in that they may not associate with plaintiff candidate, speak on his behalf, vote freely, or refuse to support defendant political organizations. Further alleged unlawful results of the patronage system are that plaintiff candidate is deprived of the right to associate with these employees, that plaintiff cannot express himself through patronage employees, that plaintiff's supporters cannot have their votes cast effectively, that the votes of plaintiff and his supporters are debased, that the election in which plaintiff is running will not be determined by votes freely cast, that plaintiff is forced to support political organizations, policies, programs, and candidates to which he is opposed, and that the electoral process is not rudimentarily fair or free of substantial political interference. Complaint, ¶ 38.

That these allegations are obviously politically oriented does not automatically resolve the motion to dismiss for if the political question doctrine is of long duration, it is also of increasingly limited scope. In recent years, the doctrine has been considerably narrowed. Thus the judiciary has considered politically tainted issues of reapportionment, e. g., Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962), petitioning for a place on a ballot, e. g., Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1969), ballot position, e. g., Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969), and discrimination in party primaries, e. g., Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944). At the same time, courts have maintained a reluctance to interfere with the strictly internal operations of a political party. Irish v. Democratic-Farmer-Labor Party of Minnesota, 399 F.2d 119, 120 (8th Cir. 1968); Lynch v. Torquato, 343 F.2d 370 (3d Cir. 1965).

■ A determination as to the justiciability of the political issues in this case in the light of the standards set forth in Baker v. Carr, 369 U.S. 186, 209, 217, 226, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), need not be made, however, because plaintiffs lack the requisite standing to litigate this controversy. Assuming for the moment that plaintiff's complaint is well pleaded, which assumption is questionable in view of the vague conclusory allegations, and further accepting for the purposes of this motion similar allegations that thousands of patronage employees are being coerced into making involuntary contributions of time

and money and that they are being deprived of their right to associate with, work for, contribute money to and vote for plaintiff candidate, (Complaint, ¶ 39) the proper parties to assert that those deprivations amount to unlawful violations of their civil rights are the patronage employees, not plaintiff. *Cf.* Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Plaintiff has asserted that "these employees are not free to assert themselves since they believe that to do so will lead to the loss of their patronage jobs or other punishment in said jobs." Complaint, ¶ 39. Nevertheless, the issues presented are of such a serious nature and have a potential impact across the country in local, state, and national affairs, that we cannot allow self-appointed representatives of other persons federal rights, no matter how decent their intentions, to attempt to remedy the alleged wrongdoing. If the patronage system does concern upwards of 30,000 persons (Complaint, ¶ 27), has existed for "many years," (*Id.*) and is as coercive and obnoxious as is claimed, there should be some patronage employees willing and able to assert their rights for themselves and their class. Any other rule would risk improper representation and prosecution of the claims of these employees to say nothing of creating raising questions concerning the binding nature of a decision affecting persons not before the court. The rule prohibiting reliance on another's constitutional rights is admittedly a rule of self-restraint which may be disregarded in unique situations where, for instance, the action of a state court might result in a denial of constitutional rights to the absent party, Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). In the instant case, we know of no similar impediment to the attempted enforcement of an aggrieved party's civil rights.

Of course, unlike the *Tileston* case, plaintiffs have alleged deprivations of their own rights. Compare, Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Yet, these asserted rights are not infringed directly, but derivatively, i. e., because rights of the patronage employees are allegedly infringed. Thus, Candidate Shakman alleges he is deprived of his freedom of speech and association because certain patronage employees are unlawfully deterred from associating with or speaking or working for him. Recognizing that standing "has been, and remains, one of the most enigmatic areas of the law," Investment Company Institute v. Camp, 274 F.Supp. 624, 632 (D.D.C.1967), we think that plaintiff is the wrong party to complain about alleged wrongs incurred by patronage workers.

Leaving aside the issue of standing to litigate, plaintiffs' complaint is subject to dismissal because it is conclusory. For purpose of testing the sufficiency of a complaint under Rule 12 (b) (6), "the well pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." 2A Moore's Federal Practice Ch. 12, ¶ 12.08 at 2266–2269 (1968). In the complaint, plaintiff contends that he is deprived of the "right to associate" with certain patronage employees, yet he has never alleged that he attempted to associate with any such employee and was spurned. Similarly, plaintiff contends that he is deprived of the "right to express and espouse" his candidacy through patronage employees. Even assuming the First Amendment guarantees the right to speak through other persons' mouths, there has been no allegation that plaintiff has attempted to engage patronage employees to speak for him. Plaintiff's allegation that he is being deprived of the "right to cast his vote effectively and to have the election determined on the basis of votes so cast" is another unwarranted deduction. Plaintiff has not alleged that he or any of his supporters who are qualified to vote have been or are being denied access to the polls. Nor has plaintiff alleged that the tally of votes cast in Constitutional Convention elections is not an accurate count of the votes made by qualified voters.

In a like fashion, plaintiff has also alleged that votes of himself and his supporters are "dilute(d) and debase(d)." This conclusion is unwarranted for a number of reasons: there has been no allegation that patronage employees in plaintiff's district are not entitled to vote, there is no way of precisely knowing which voter votes for which candidate, and plaintiff candidate in fact received enough votes to qualify as a candidate for the office he seeks. Similarly, the conclusion is unwarranted that votes cast in the two Constitutional Convention elections are not "freely cast." Again, no one can say for sure which voter voted for which candidate. See generally, Complaint, ¶ 38.

In addition, plaintiff has alleged that he and his supporters have been deprived of a fair electoral process free of "substantial partisan interference." Neither the federal constitution nor any civil rights law prohibits legitimate activity including canvassing, poster hanging and poll watching (Complaint, ¶ 38) by partisan political personnel in an election. The patronage employees about whom plaintiff is so concerned have as much right to support the candidate of their choice as do plaintiff's supporters. No doubt plaintiff will respond in agreement, but contend that the employees are coerced. If so, then as stated earlier, it is not for plaintiff to assert the rights of others, rather it is the patronage employees' right to bring an action on their own behalf.

Plaintiff has further contended that he is "force(d) * * * to support and contribute" to a political organization to which he is opposed. In all of plaintiff's lengthy complaint, we can find no factual allegations regarding coercion as to him. The funds allegedly used by plaintiff's opponents are allegedly derived from coerced contributions from patronage employees. Complaint, ¶¶ 29, 30, 35. As plaintiff has not alleged himself to be one of these coerced contributors of time and money, the conclusion that he is forced to support policies and

personnel undesirable to him is simply not justified. To the extent plaintiff complains that taxpaying is a compelled involuntary contribution to defendants and their policies, the complaint fails to state a cause of action. Payment of taxes cannot be refused because of disagreement with governmental policies, whether they include school busing, law enforcement or anything else. The mere fact that some individual defendants are not only government officials, but also political leaders does not alter the propriety of paying properly assessed taxes.

Finally, plaintiff also alleges that the acts of the defendants constitute "gross and invidious discrimination" against plaintiff as a candidate and voter. However, the relationship between the acts alleged and the result alleged is not apparent. Plaintiff is not entitled to the support of any or all political parties or their supporters. To allege that they deny him aid or oppose him may indicate a lot of things, but one of them is not unlawful discrimination.

In conclusion, viewed charitably, the complaint makes several serious charges regarding the direct deprivation of rights of a class of persons characterized as Democratic patronage employees. Whether or not the complaint can be said to state a cause of action on their behalf need not be considered presently, because those employees are not before this court. Further, given the gravity of the charges and the absence of any allegation that plaintiff fairly represents the class of allegedly aggrieved employees, we find that plaintiff does not have standing to assert the alleged violations of the rights of said employees as set forth in the Complaint, ¶ 39.

Nor do we think the complaint can be saved because plaintiff has alleged that the harm done to the patronage employees also harms him. The violations charged in the Complaint, ¶ 38 are too conclusory to support a cause of action upon which relief may be granted. Plaintiff has simply not alleged facts sufficient to warrant the deductions and

charges of alleged deprivation of rights as to him and his supporters.

Plaintiffs' motion for injunctive relief is denied. Defendants' motion to dismiss is granted.