William JAMES and Van Dudley, Plaintiffs,

v.

Richard OGILVIE, Governor, State of Illinois, William F. Cellini, Director, Illinois Department of Public Works and Buildings, Adlai E. Stevenson, Treasurer, State of Illinois, Defendants.

No. 69 C 1830.

United States District Court,
N. D. Illinois, E. D.

March 20, 1970.

Cornelius Toole, Chicago, Ill., Gen. Counsel, Chicago Metropolitan Council, N.A.A.C.P., for plaintiffs.

John Galvin, Asst. Atty. Gen., State of Illinois, for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

This is a civil rights class action brought pursuant to the Fourteenth Amendment to the United States Constitution, 28 U.S.C. §§ 1331, 1343(3), 2201, and 42 U.S.C. §§ 1981, 1983. Plaintiffs William James and Van Dudley are Negro citizens of the United States and residents of Chicago, Illinois, who, allegedly, although qualified to perform the work of a plumber and sprinkler fitter, respectively, have been denied admittance into the appropriate local labor unions solely because of racial discrimina-

tion. Defendants Richard Ogilvie, Adlai Stevenson, and William Cellini are, respectively, the Governor, Treasurer, and Director of Public Works and Buildings of the State of Illinois. It is plaintiffs' theory that the defendants, knowing of the allegedly existing racial discrimination by labor unions, have, by contracting with the various discriminatory building unions, supported racial discrimination in violation of federal law. Plaintiffs, on behalf of themselves and all other Negro workmen who are qualified by skill but unable because of racial discrimination to join a union and thereby secure employment on government supported building projects, seek injunctive relief enjoining defendants from contracting with discriminatory labor contractors for the construction of publicly supported buildings and a declaration of the rights of the parties to this action.

The defendants have filed a motion to dismiss this action on the grounds that the action is barred by stare decisis, that the defendants are immune from suit, that the complaint fails to state a cause of action, that the issues raised are not justiciable, that there are other adequate remedies available, and that there is no federal jurisdiction.

■ To begin with, this action is not barred by the doctrine of stare decisis. The reasoning of Gaynor v. Rockefeller, 15 N.Y.2d 120, 256 N.Y.S.2d 584, 204 N.E.2d 627 (1965), cited by the defendants, supports their contention that this action should be dismissed. However, that decision does not compel dismissal under stare decisis because this action involves different parties concerned with different laws applicable to a different factual setting in a different forum. Compare, Rhodes v. Meyer, 334 F.2d 709, 718 (8th Cir. 1964), cert. denied 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964). Moreover, Ethridge v. Rhodes, 268 F.Supp. 83 (S.D.Ohio 1967) presents a subsequent and contrary position to that taken in *Gaynor*.

■ Nor are these defendants immune from suit. Defendants suggest that in the absence of any allegations that they were acting other than in their official capacity as state officials, they are immune from this civil rights action. This argument has no merit. It is precisely because defendants committed the alleged conduct in their official capacities, that is, under color of law, that they are subject to civil rights suits. 42 U.S.C. § 1983. Clearly, public officials are not immune from suit when they allegedly violate the civil rights of citizens. American Federation of State, County and Municipal Employees v. Woodward, 406 F.2d 137, 138 fn. 2 (8th Cir. 1969); Birnbaum v. Trussell, 347 F. 2d 86, 88–89 (2d Cir. 1965); Inmobiliaria Borinquen, Inc. v. Garcia Santiago, 295 F.Supp. 203, 205–206 (D.P.R.1969).

■ Defendants' contention that this complaint fails to state a cause of action is grounded in an essentially restrictive and now outdated concept of the rights of free citizens in a free society. Civil actions for deprivation of rights are allowable pursuant to 42 U.S.C. § 1983. Under this section, plaintiffs must assert that defendants acted under color of law. This plaintiffs have done.

■ Further, plaintiffs must allege that they were deprived of some Constitutional or legal right. The right of a skilled, qualified worker not to be excluded from membership in a labor organization because of his race or skin color is a firm, established statutory right under federal law, 42 U.S.C. § 2000e–1, and under Illinois law, Ill.Rev. Stat. Ch. 48, § 853(c) (1967). It has also been held, and properly so, that as membership in a labor union is a contractual relationship or at least a link in obtaining an employment contract, the rights to union membership without regard to race or skin color also exists under 42 U.S.C. § 1981, which provides for equal rights in the making of a contract. Dobbins v. Local 212, International Brotherhood of Electrical Workers, 292 F.Supp. 413, 442 (S.D.Ohio 1968). See also, Whitner v. Davis, 410 F.2d 24, 30 (9th Cir. 1969); Van Zandt v. McKee, 202 F.2d 490, 491 (5th Cir. 1953); In re

Tiburcio Parrott, 1 F. 481, 498, 505–521 (C.C.1880).

■ Finally, plaintiffs must allege that it was the defendants who, while acting under color of law, were the parties that subjected plaintiffs or caused them to be subjected to the alleged deprivation. Here, the plaintiffs have basically charged that the state officials have become joint participants in racially discriminatory hiring practices. If so, such conduct constitutes a violation of Section 1983. Ethridge v. Rhodes, 268 F.Supp. 83, 87 (S.D.Ohio 1967); *cf.* Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L. Ed.2d 45 (1960); Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134, 137 (S.D.N.Y.1968). Having alleged all of the elements of Section 1983, plaintiffs have stated a good cause of action in federal law. Defendants' suggestions that plaintiffs' allegations are conclusory are not well founded.

■ Defendants' next contention, that the issues presented in this action are non-justiciable political questions, is similarly without substance. The political question doctrine is of increasingly limited scope, Shakman v. Democratic Organization of Cook County, 310 F. Supp. 1398 (N.D.Ill.1969), and the mere fact that an action is brought against government officials who may also be political leaders does not mean that the issue presented is a political question. *Cf.* Baker v. Carr, 369 U.S. 186, 209, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). In fact, a trial was held and an order was fashioned in a case quite similar to this one, Ethridge v. Rhodes, 268 F.Supp. 83 (S.D. Ohio 1967). Contrary to defendants' position, the *Ethridge* case did not substitute sociology for the rule of law, rather it applied the various laws which seek to insure equal employment opportunities for all of this nation's citizens to a situation where those rights were being infringed by public officials and it fashioned legal remedies to correct violations of those laws.

■ That there are potential state remedies available to plaintiffs is not a sufficient ground for dismissal of this action. Relief under Section 1983 is not inappropriate even where relevant state remedies are available, but not pursued. Whitner v. Davis, 410 F.2d 24, 28 (9th Cir. 1969); Kalec v. Adamowski, 406 F. 2d 536, 537 (7th Cir. 1969); Lee v. Hodges, 321 F.2d 480, 484 (4th Cir. 1963).

■ Whether or not federal administrative procedures must be invoked before plaintiffs can be said to have standing to bring this civil rights action is not as clear. There is no doubt that a federal civil action may not be brought under 42 U.S.C. § 2000e–5(e) unless the moving party first commenced action under the federal administrative procedure dealing with unlawful employment practices. Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399, 403 (5th Cir. 1969); Choate v. Caterpiller Tractor Co., 402 F.2d 357, 359 (7th Cir. 1968); Stebbins v. Nationwide Mutual Ins. Co., 382 F.2d 267, 268 (4th Cir. 1967); Green v. McDonnell-Douglas Corp., 299 F.Supp. 1100, 1101–1102 (E. D.Mo.1969). Yet, while Section 2000e–5(e) requires prior exhaustion, Section 1983, a general civil rights provision and the basis for the instant action, is silent as to whether federal administrative exhaustion is a jurisdictional prerequisite. In sum, there appears to be a procedural inconsistency between two federal statutes, both of which concern the statutory civil right to an equal employment opportunity.

To the extent that any such inconsistency exists, however, it must be resolved by Congress, not by the judiciary. We do know that Congress did direct that certain jurisdictional statutes relating to labor disputes, 29 U.S.C. §§ 101–115, were not to apply to civil actions brought under Section 2000e. See 42 U.S.C. § 2000e–5(h). On the other hand, there is no language in Section 2000e–5 and we know of nothing in the Congressional consideration of it that indicates that the problem of overlapping civil rights jurisdiction was discussed or evaluated, and it would be im-

proper for this court to imagine what Congress might have done.

If a party seeks to avoid Section 2000e–5 and its exhaustion requirement and instead pursues a perceived grievance through Section 1983, which incorporates no such requirement, that is his prerogative. Were we to hold that exhaustion of federal administrative procedures is required in order to acquire standing in federal court for this type of case, we would, in effect, be saying that Section 1983 allows for civil actions based on the deprivations of any Constitutionally or legally secured right, except that of freedom from discriminatory employment practices. Moreover, to require exhaustion of the federal remedy would indirectly compel exhaustion at the state level and that, as we have previously stated, is not necessary. See Ethridge v. Rhodes, 268 F.Supp. 83, 88–89 (S.D.Ohio 1967).

Thus, this federal court has jurisdiction to entertain this action which is based on an alleged deprivation of civil rights. As a public official's defense of immunity is to be sparingly applied in these kinds of cases, Jobson v. Henne, 355 F.2d 129, 133–134 (2d Cir. 1966); Donovan v. Mobley, 291 F.Supp. 930, 934 (C.D.Cal.1968), a district court has the power to grant equitable relief against state officers who allegedly violate plaintiff's constitutional rights. Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969); National Association for Advancement of Colored People v. Thompson, 357 F.2d 831, 838–841 (5th Cir. 1966), cert. denied 385 U.S. 820, 87 S.Ct. 45, 17 L.Ed.2d 58 (1966); Shellburne, Inc. v. New Castle County, 293 F.Supp. 237, 244 (D.Del. 1968).

That a court has certain power, of course, does not mean that it must or should exercise that power. The extraordinary relief which plaintiffs seek here may only be utilized when the alleged injury is irreparable and no other adequate legal remedy exists.

There is a functional difference between exhaustion of administrative remedies for the purposes of standing and jurisdiction and exhaustion for the purpose of demonstrating the lack of a viable means of achieving redress. Failure to pursue administrative remedies does not, in itself, bar a federal civil rights action, but neither does it support the contention that existing legal remedies are so inadequate as to require extraordinary relief. Quite simply, how can plaintiffs claim state remedies are clearly inadequate unless they have tried to utilize them? Thus, while we have held that plaintiffs need not seek redress through administrative channels as a pre-requisite to the bringing of this action, we do not find that plaintiffs have demonstrated that those channels are, in fact, inadequate means of obtaining complete justice efficiently. In the *Ethridge* case, testimony of the Director of the Ohio State Civil Rights Commission indicated that Ohio's administrative remedies were too slow to be meaningful. No such evidence is before us. On the present record, issuance of temporary injunctive relief would be unwarranted. See Miller v. Purtell, 289 F. Supp. 733, 734 (E.D.Wis.1968).

In conclusion we do not dismiss this action, neither do we afford any temporary relief. Moreover, following the submission of defendants' answer to the complaint which should be filed within twenty days, this court will entertain motions for the joining of indispensable parties who are needed for a just adjudication and that this action be held in abeyance until such time as the plaintiffs attempt to pursue available state remedies or show cause why such remedies are inneffective to protect their rights. See Whitner v. Davis, 410 F.2d 24, 28 (9th Cir. 1969); Bateman v. South Carolina State Ports Authority, 298 F.Supp. 999, 1003–1005 (D.S.C. 1969).

Parenthetically, as the federal equal employment opportunities bill emerged from Congress, the Congressional intent to channel local labor problems to local machinery became apparent. The Sen-

ate Minority Leader, Sen. Dirksen (R–Ill.) commented:

(W)ith respect to the enforcement of the title, we undertook to keep primary, exclusive jurisdiction in the hands of the State commissions for a sufficient period o'f time to let them work out their own problems at the local level. 110 CONG.REC. 13087 (1964).

The Majority Whip, Sen. Humphrey (D–Minn.) described the basic philosophy of the bill as follows:

\* \* \* that, whenever possible, the problems dealt with by the bill should be resolved locally and voluntarily. 110 CONG.REC. 12707 (1964) \* \* \* (W)e provide for local and State enforcement wherever there are local and State instrumentalities. 110 CONG. REC. 13088 (1964).

See Equal Employment Opportunity Comm. v. Union Bank, 408 F.2d 867, 869–870 (9th Cir. 1969). Our decision to withhold immediate judicial intervention into this local labor problem is mindful of and consistent with the Congressional intent in this area.