**ERNST J. MEYER, Plaintiff,**

v.

**MASSACHUSETTS EYE AND EAR INFIRMARY, Defendant.**

**Civ. A. No. 71–957–G.**

United States District Court,
D. Massachusetts.

Aug. 24, 1971.

---

Ernst J. Meyer, pro se.

David Hanrahan, Boston, Mass, for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

GARRITY, District Judge.

Petitioner Meyer, a staff doctor at the Massachusetts Eye and Ear Infirmary,

seeks damages and an injunction against the defendant Infirmary, alleging various violations of the United States Constitution and the anti-trust laws. Jurisdiction is predicated upon 42 U.S.C. § 1983, 28 U.S.C. § 1331 and other jurisdictional statutes. Defendant moved to dismiss the complaint, and at the hearing on the motion plaintiff submitted an amended complaint, which the court received without objection. It is on the amended complaint that this memorandum is based. The parties have filed memoranda of law and affidavits, most of the latter dealing with the internal organization of the hospital.

## I.

At the heart of plaintiff's grievance is the Infirmary's practice of dividing patients into two groups, private and clinic. A private patient selects his or her own physician who remains responsible for the patient through the postoperative period and who at all times owes to the patient the highest duties of disclosure and care. Plaintiff contends that with the advent of extensive Medicare and Medicaid benefits for the aged and indigent, any patient is financially able to receive private care.

In contrast to the quality personalized attention afforded private patients, plaintiff advances a bleaker description of the lot of clinic patients. These patients, who plaintiff contends are disproportionately black, Oriental and foreign-born, allegedly are not adequately informed of the availability of private care. Without their informed consent, they are classified as clinic patients, with the following alleged negative results: (1) clinic patients are made involuntary subjects for medical and surgical training of resident physicians; (2) clinic patients receive treatment inferior to that afforded private patients; (3) clinic patients are exposed to greater risks through surgical operations, even experimental operations, by residents-in-training to which they have not given their informed consent; and (4) clinic patients have no one physician

whom they may hold accountable and, concomitantly, postoperative care is conducted through the clinic by physicians not necessarily familiar with the patient's history.

Plaintiff argues upon these asserted facts that clinic patients' rights to full disclosure and equal treatment have been violated, and he advances several theories supportive of his right to litigate on the patients' behalf. In addition, plaintiff alleges the violation of several rights personal to himself, including rights guaranteed him under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and the free speech clause of the first amendment. In return for staff privileges, plaintiff is obligated to devote two uncompensated half-days per week to the treatment of clinic patients, and he alleges that in relation to these duties he is prohibited (1) from advising these patients of their right to private treatment, either by him or by another physician; (2) from advising these patients in such a manner as to inform them of the aforementioned risks peculiar to clinic patient status; and (3) from otherwise meeting his own ethical obligations to these patients, including his duty to provide quality postoperative care and supervision. These obligations form the basis for plaintiff's antitrust and first amendment claims. Finally, plaintiff contends that the defendant Infirmary's receipt of federal funds under the Hill-Burton and other Acts is sufficient state involvement to sustain a constitutional claim.

## II.

█ It is quite apparent that if plaintiff's allegations are demonstrable the Infirmary's treatment of clinic patients may subject it to substantial, although perhaps not federal, liability. And it is equally apparent that if inadequate treatment falls along social and ethnic lines, constitutional violations may exist. Nevertheless, in the court's opinion plaintiff lacks standing to plead these patients' rights.

Tileston v. Ullman, 1943, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603, remains the dispositive case on this issue. There, the Court rejected a doctor's attempt to assert patients' constitutional rights in a declaratory judgment action against the enforcement of an anti-contraception statute. The thrust of Tileston, that the rights of non-parties to a dispute may not be litigated, clearly retains vitality. See Shakman v. Democratic Organization of Cook County, N.D.Ill., 1969, 310 F.Supp. 1398, 1400–1401.

It is true that the law of standing has undergone salutary broadening since Tileston was decided. Plaintiff cites such cases as Griswold v. Connecticut, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, and Barrows v. Jackson, 1953, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586, arguing that these cases render Tileston inapplicable to these facts. Barrows and Griswold are distinguishable, however; in each, certain factors operated to preclude the availability of proper parties to litigate the issues involved. In Barrows, a case involving racially restrictive covenants, to allow contract damages for the breach of such covenants would inhibit property owners from initiating sales to blacks; and, absent such sales, Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, which upheld the private right to such discrimination but proscribed judicial enforcement of racial covenants, would have been rendered nugatory. Similarly, since married persons in Connecticut previously had been denied the opportunity to attack anti-contraception legislation in a declaratory judgment proceeding for want of imminent or likely prosecution, Poe v. Ullman, 1961, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989, and since, presuming the efficacy of the legislation, married persons would not be able to make the purchases of contraceptives precedent to criminal jeopardy, the rights of these persons could not practically be raised in any other fashion. Thus, each of these cases turns upon a "unique set of circumstances" as Mr. Justice Minton used that phrase in the Court's opinion in Barrows. 346 U.S. at 259, 73 S.Ct. 1031. No circumstances which would exclude the proper parties from advancing their own rights have been demonstrated here, and the court is unable to divine any.

■ Turning to the antitrust allegations, they are without merit. In the broadest sense, plaintiff is not impeded in any way from practicing his profession, either privately or in affiliation with another hospital. These facts differ markedly from the case where concerted activity is leveled against a practitioner to force him to abandon a legally permissible line of conduct. Cf. United States v. Oregon State Medical Society, 1952, 343 U.S. 326, 329, 72 S.Ct. 690, 96 L.Ed. 978. Furthermore, the requirement that plaintiff devote uncompensated time to the service of clinic patients does not rise to the level of an unlawful restraint upon his practice; rather, it is reasonable consideration flowing from the plaintiff to the defendant in return for valuable staff privileges.

Therefore defendant's motion to dismiss is granted, on the ground of failure to state claims on which relief can be granted, to the extent that it pertains to plaintiff's antitrust claims and the claims he asserts on behalf of clinic patients at the defendant Infirmary.[1]

We come finally to plaintiff's first amendment contention. Plaintiff alleges that the defendant by express prohibition denies him the right to inform clinic patients of the availability of private treatment by doctors like himself and of the specific risks inherent in clinic patient status.

■ First Amendment claims lie not against private agencies but against state agencies. Plaintiff locates state

---

1. Other contentions of the plaintiff, including those based upon principles of trusteeship, third-party beneficiaries and contracts, have been considered and are rejected by the court without discussion because they are insubstantial and inapposite.

involvement here in the Infirmary's participation in the Hill-Burton program, among other federally-funded projects. Hill-Burton participation has been held sufficient to constitute state involvement for fourteenth amendment purposes, Simkins v. Moses H. Cone Memorial Hospital, 4 Cir., 1963, 323 F.2d 959; Sams v. Ohio Valley General Hospital Association, 4 Cir., 1969, 413 F.2d 826, and as a matter of pleading the court finds such an allegation sufficient to withstand a motion to dismiss.

■ At trial, however, plaintiff still must demonstrate by an affirmative presentation of evidence that the defendant's involvement with the state is sufficient under the test laid down in McQueen v. Druker, 1 Cir., 1971, 438 F.2d 781, 784–785. Beyond a general "sifting [of] facts and weighing [of] circumstances," that test seems to require that a defendant (1) engage in advancing a specific government function, (2) receive a heavy government subsidy, and (3) be in a position where its freedom of decision-making "has, by contract and the reserved governmental power of continuing oversight, been circumscribed substantially more than that generally accorded an independent contractor. * * *" 438 F.2d at 784–785.

■ Turning to the substance of plaintiff's first amendment claim, any restriction upon his informing patients of the availability of private care is reasonable. From affidavits and submitted exhibits, the court finds that that information is imparted to all patients by the clinic's admitting officers. In addition, it is reasonable for the administration to assume that the absence of such a restriction, while not adding to a patient's knowledge, might lead to unseemly solicitation of patients by doctors whose services ostensibly had been volunteered. Such reasonable restraints upon speech are not prohibited. See Sword v. Fox, 4 Cir., 1971, 446 F.2d 1091.

■ In contrast to the reasonableness of this restriction, plaintiff also alleges that he is restrained from informing pa-

tients of the dangers inherent in certain proposed procedures or in operations by less experienced residents-in-training. An evaluation of these dangers constitutes an opinion which is peculiarly within the plaintiff's expertise and which he has specifically been licensed by the state to render. This allegation, therefore, is sufficient to state a cause of action and as to it defendant's motion is denied.