Nathaniel C. BYRD et al.,
Plaintiffs,

and

Eddie Hudson, Individually and on behalf of others similarly situated,
Intervening Plaintiff,

v.

LOCAL UNION NO. 24, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al., Defendants.

Civ. A. No. 72–848–M.

United States District Court,
D. Maryland.

March 19, 1974.

Alan S. Davis, Legal Aid Bureau, Inc., and Kenneth L. Johnson, Baltimore, Md., Dennis R. Yeager and E. Richard Larson, National Employment Law Project, New York City, for plaintiffs.

James P. Garland, Carl E. Eastwick, and Thomas E. Bracken, Baltimore, Md., and Thomas X. Dunn and Robert L. Barton, Jr., Washington, D. C., for Local Union No. 24, I.B.E.W., and Joint Apprenticeship Training Committee.

James P. Garland and Carl E. Eastwick, Baltimore, Md., for Maryland Chapter N.E.C.A., Howard P. Foley, Inc., and Howard P. Foley, individually and as co-counsel for the Electrical Industry.

Leonard E. Cohen and Monte Fried, Baltimore, Md., for Mechanical Contractors, Sheet Metal Contractors, Baltimore Steamfitters, Lloyd E. Mitchell, Plumbers & Gasfitters, and Trustees, Steamfitters Local 438, Medical Fund.

Stanley Mazaroff, Baltimore, Md., for Piracci Const. Co., Inc.

Cosimo C. Abato and Anthony A. Abato, Jr., Baltimore, Md., for Baltimore Steamfitters, Trustees, Maryland Electrical Industry Welfare Fund, Baltimore Steamfitters' Area Joint Apprenticeship Committee, and Trustees, Steamfitters Local 438, Medical Fund.

Paul E. Gaeng and John J. Hirsch, Baltimore, Md., for Baltimore Sheet Metal Workers and Plumbers and Gasfitters Joint Apprenticeship Committee, Locals 37, 37A, 37B, 37R, and 122, and Trustees of the Health and Welfare Funds of Local 48.

Stanley Mazaroff, Baltimore, Md., for Steel Erectors Assn., Associated Gen. Contractors, and Ehrhardt & May, Inc.

W. Hamilton Whiteford and Nevett Steele, Jr., of Baltimore, Md., for Trustees of the Health and Welfare Fund of Sheet Metal Workers Local 122.

John H. Somerville, Baltimore, Md., for R. E. Linder Steel Erection.

Sidney Blum, Baltimore, Md., for Trustees of the Health & Welfare Funds, Local Union No. 16, Local No. 16, Joint Apprenticeship Training Committee, and Local Union No. 16, Intern. Assn. of Bridge, Structural & Ornamental Ironworkers.

JAMES R. MILLER, Jr., District Judge.

This action has been brought by 10 individual plaintiffs, for themselves and as putative representatives of a class of persons allegedly similarly situated, against labor unions, contractors and

others associated with one or more of six trades forming a part of what could generically be called "the building industry" in the Greater Baltimore area. The gravamen of the plaintiffs' complaint is that the policies, practices, and customs of the defendants relating to the recruitment, apprenticeship, union membership, training, referral, hiring, and representation of workers within these six trades have resulted in unlawful racial discrimination against qualified black persons. The complaint, as amended, and an intervening complaint allege that the respective causes of action lie under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1988, 28 U.S.C. §§ 2201 and 2202, and 29 U.S.C. § 151 et seq. The intervening plaintiff, Eddie Hudson, additionally claims a right of action under 42 U.S.C. § 2000e et seq.

Recently, a consent decree (Paper No. 193) was entered by this court, granting certain relief to Dennis Harlee and Lorenzo Campbell individually and as representatives of a class more specifically defined in an order certifying a portion of this case as a class action (Paper No. 192). The aforesaid consent decree and related orders disposed of all issues in the case concerning the steamfitter trade.

The five remaining trades are the electrical trade, the operating engineering trade, the plumbing and gasfitting trade, the ironworking trade, and the sheet metal trade. The court will now dispose of the myriad of motions pending as to the issues and parties concerned with the remaining trades.

I

*Unions' Motions to Dismiss*

A. *Failure to exhaust Title VII remedies.*

■ Defendant unions, Local 24, International Brotherhood of Electrical Workers (I.B.E.W.); Local Nos. 37, 37A, 37B, 37R, International Union of Operating Engineers (Operating Engineers); Local 122, Sheet Metal Workers; Local 48, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (Local 48); and Local No. 16, International Association of Ironworkers (Local 16) have filed motions to dismiss the plaintiffs' complaint. The defendant unions claim that plaintiffs'[1] admitted failure to exhaust their remedies under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) before bringing the present action under 18 U.S.C. § 1981 was improper and thus deprives this court of jurisdiction. Defendant unions rely on Waters v. Wisconsin Steel Works of Int'l Harvester Co., 427 F.2d 476 (7th Cir. 1970), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), as support for their position. The court in *Waters* held that 42 U.S.C. § 1981 provides an independent cause of action to remedy racial discrimination in employment only in circumstances in which the plaintiffs have pleaded "a reasonable excuse" for failing to exhaust Title VII's administrative remedies. No such "reasonable excuse" was pleaded in this case.

The approach taken by the *Waters* case has not been adopted by this court. See oral opinion in Lewis v. Bethlehem Steel, C.A. No. 70–1127–M (D.Md.1971), and Lane v. Bethlehem Steel, C.A. No. 71–580–M (D.Md.1971). *Contra,* Harper v. Mayor and City Council, 359 F. Supp. 1187 (D.Md.1972). *Cf.* Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377 (4th Cir. 1972), cert. denied, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *see also,* Alexander v. Gardner-Denver Co., 415 U.S. 36 at 47–51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Young v. IT & T Co., 438 F.2d 757 (3rd Cir. 1971); Brady v. Bristol Meyers, Inc., 459 F.2d 621 (8th Cir. 1972); Caldwell v. National Brewing Co., 443 F.2d 1044 (5th Cir. 1971), cert. denied, 405 U.S. 916, 92 S.Ct. 931, 30 L.Ed.2d 785 (1972). There is no reason to con-

---

1. Only intervening plaintiff, Eddie Hudson, has filed a complaint with the Equal Employment Opportunity Commission under Title VII.

clude that Title VII administrative remedies were designed to supplant, limit, or delay the utilization of § 1981.

B. *Failure to state a claim under § 1983 and the 14th Amendment.*

Defendant unions contend that under the standards set forth in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the plaintiffs have failed to allege the necessary state action or action "under color of state law" required to state a § 1983 or 14th Amendment claim.

 Plaintiffs' answer to the defendants' contention is in two parts. First, plaintiffs contend that the Joint Apprenticeship Training Committee (JATC) programs in each trade are encouraged, supervised, registered, and partially financed by the State of Maryland under statutory authority, i.e., Md. Ann.Code, Art. 89 §§ 50(3), 53(2), 54 (4), and 55, and Art. 100 § 97(e) (1957 as amended). Furthermore, according to the plaintiffs, the JATCs are, in effect, mere agents of the defendant unions (See ¶¶ 31–38 of the complaint). The argument of the plaintiffs is that the connection of the JATCs with the State is so close that their actions are "under color of state law" and that, therefore, the actions of the defendant unions, as principals of the JATCs, are also "under color of state law." Several of the defendant unions have filed affidavits of their respective presidents in connection with their motions to dismiss, denying any agency relationship between the JATC and the union. These affidavits do not deny, however, that the defendant unions partially fund the JATCs nor that the JATCs are composed of union and contractor representatives who conceivably might act to further alleged union and contractor policies designed to discriminate against blacks. One of the major allegations of the complaint is that the contractors and unions in the respective trades have conspired to deprive the plaintiffs of their constitutional rights. A motion to dismiss should not be granted unless it is clear that the plaintiffs could not prove any set of facts under the pleadings which would entitle them to relief, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Similarly, a motion for summary judgment may not be granted where conflicting inferences can be reasonably drawn from admitted facts. Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951). Whether treated as motions to dismiss or as motions for summary judgment under Rule 12(b), F.R.Civ.P., the defendant unions' motions on this point must be denied at this stage of these proceedings since it is not absolutely certain that defendant unions are not acting "under color of state law" through their relationship with the JATCs.

 Plaintiffs' second contention with respect to state action is that vast expenditures of public funds go to members of defendant unions who work on public projects as employees of contractors which have been successful bidders on government work, and thus the unions are sufficiently connected with the State so that the unions' allegedly discriminatory activities are "under color of state law." (See ¶¶ 23, 30, 44 of complaint). The distance between the State and the unions is substantial under these allegations, and the argument of the plaintiff is tenuous. The *Moose Lodge* case clearly states that the Court has never held and does not intend to hold that "an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State . . . ." 407 U.S. at 173, 92 S.Ct. at 1971. At most, the money earned by union members who work on public projects is an incidental benefit to the union which receives dues money from its working members. The unions are at least one step removed from the public expenditure. State money is not received directly by the unions nor can ordinary building contracts between the State and the contractors be said to join the unions with the State or the contractors as partners or joint venturers.

As part of their public money argument, plaintiffs also rely on what may be characterized as an "encouragement theory." See Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), and *Moose Lodge, supra,* 407 U.S. at 173, 176–177, 92 S.Ct. 1965. In ¶¶ 23, 30, and 44 of their complaint, plaintiffs have alleged that the State has, by failing to enforce antidiscrimination contractual provisions, encouraged unions and contractors to discriminate against blacks. The basic problem with this so-called encouragement theory, as it applies to labor unions, is that the unions receive no direct encouragement. There is no contract between the unions and the State which directly regulates or attempts to regulate the unions' affairs. Only indirectly, through the alleged failure to incorporate or enforce contractual provisions between the State and the contractor, do the actions of the State allegedly benefit the defendant unions. Since, however, the defendant unions' motions to dismiss for failure to establish action "under color of state law" must be denied at this stage in these proceedings in any event, the court need not at this time decide the ultimate merit of the plaintiffs' "encouragement theory."

C. *Failure to state a claim for relief under § 1985(3).*

Defendant unions argue that plaintiffs have alleged only conclusions with respect to a conspiracy and have failed to set forth any specific facts which show the existence of a conspiracy. Plaintiffs answer that conclusory allegations are sufficient to state a § 1985(3) claim if overt acts have been alleged with particularity. In support of this position, plaintiffs cite Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1950), which states:

"In a civil conspiracy, the conspiracy itself is not a cause of action, without overt acts, because again it is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage. Accordingly, the cases hold that the damage in a civil conspiracy flows from the overt acts and not from the conspiracy.

"Therefore, the certainty we look for in a proper complaint under the Civil Rights Statutes, is . . . in the particular acts which are alleged to have caused damage. The real question is *whether* or not the . . . complaint . . . sets forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff."

*See also* Powell v. Workmen's Comp. Bd. of N.Y., 327 F.2d 131 (2d Cir. 1964); Birnbaum v. Trussell, 347 F.2d 86 (2d Cir. 1965); Weise v. Reisner, 318 F. Supp. 580 (D.Wis.1970); Valley v. Maule, 297 F.Supp. 958 (D.Conn.1968); Lombardi v. Peace, 259 F.Supp. 222 (S.D.N.Y.1966). (The latter two cases were cited by defendant unions, but the cases lend support to the plaintiffs' position).

Assuming that plaintiffs' position is correct with respect to the allegation of a § 1985(3) conspiracy, the complaint must then be examined to determine whether overt acts have been sufficiently set forth. With respect to defendant unions, ¶¶ 14–22, 54, 79–80, 83–84, 86–92, 99, 100–102, and 105–110 of the complaint as amended adequately allege overt acts committed by the unions.

██ Aside from what they refer to as technical deficiences in the complaint, defendant unions also claim that plaintiffs have failed to allege "some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." As set forth in Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the invidiously discriminatory animus re-

quired is no more than that the alleged conspiracy "must aim at a deprivation of equal enjoyment of rights secured by the law to all." In other words, the discrimination must be directed at a class of persons rather than an individual. Hughes v. Ranger Fuel, 467 F.2d 6, 8–9 (4th Cir. 1972); Bricker v. Crane, 468 F.2d 1228, 1232–1233 (1st Cir. 1972). Such class-based discrimination is clearly alleged in the complaint here under consideration. Specific intent is not required. See Azar v. Conley, 456 F.2d 1382 (6th Cir. 1972).

Defendant unions further argue with respect to the discriminatory animus required by § 1985(3) that threats, violence or intimidation must be a part of said animus. Although *Griffin* did involve threats and violence, the Supreme Court in no way indicated that threats or violence are required in cases brought pursuant to § 1985(3). The court stated in *Griffin* that: "The claims of detention, threats, and battery amply satisfy the requirement of acts done in furtherance of the conspiracy." 403 U.S. at 103, 91 S.Ct. at 1799. Thus, the allegations of threats and violence in *Griffin* were no more than overt acts in furtherance of the conspiracy rather than elements of discriminatory animus. See Johnson v. City of Cincinnati, 450 F.2d 796 (6th Cir. 1971), (Sex discrimination in employment); Richardson v. Miller, 446 F.2d 1247 (3rd Cir. 1971) (Discharge due to racial policy of employer); Crabtree v. Brennan, 466 F.2d 480, 481 (6th Cir. 1972); Bricker v. Crane, *supra*.

### D. *Failure to state a claim under the 13th Amendment.*

■ Defendant unions argue that plaintiffs have not alleged that they have been forced to labor against their will for the benefit of another, and that such an allegation is essential to a 13th Amendment claim. Defendants cite Flood v. Kuhn, 443 F.2d 264 (2d Cir. 1971), aff'd, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), in support of their position. Plaintiffs appear to agree that they have failed to allege an independent cause of action under the 13th Amendment. Nevertheless, it is clear that the 13th Amendment provides constitutional support for claims under 42 U.S.C. § 1981 as applied to purely private acts. See, Griffin v. Breckenridge, *supra*; Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L. Ed.2d 1189 (1968); Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S. Ct. 400, 24 L.Ed.2d 386 (1969); Tillman v. Wheaton-Haven Recreation Assn., 410 U.S. 431, 439–440, n. 11, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973).

### E. *Failure to state a claim for breach of the duty of fair representation.*

■ Plaintiffs have claimed in the amended complaint that defendant unions have breached their statutory duty of fair representation under 29 U.S.C. § 158(b) by racially discriminating against plaintiffs and their class. Only defendant union Local 24, I.B.E.W., has moved to dismiss this claim. The initial argument of Local 24 is that plaintiffs have confused a cause of action for breach of the duty of fair representation with an unfair labor practice under the N.L.R.A. (29 U.S.C. § 151 et seq.), and that plaintiffs should be required to present their claims to the N.L.R.B. Basically, defendant Local 24 seems to contend that because the N.L.R.B. has held that a breach of a union's duty of fair representation constitutes an unfair labor practice, plaintiffs may not present their "duty of fair representation" claims in federal court. The Supreme Court in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), specifically held that N.L.R.A. does not preempt the jurisdiction of federal courts to try "duty of fair representation" cases.

■ Aside from the above technical argument, defendant Local 24 has challenged plaintiffs' standing to claim a breach of the duty of fair representation. Plaintiffs Wedderburn and Coombs are alleged to have had long ex-

perience in electrical work, to have registered with Local 24 for job referral, and to have requested membership in Local 24. Both men are alleged to have been denied referral and union membership. Plaintiffs contend that, pursuant to section 8(f) of the N.L.R.A. (29 U.S.C. § 158(f)), Local 24 is the exclusive collective bargaining agent for electrical construction workers in the Baltimore area, and as such it has a duty to represent both union and non-union electrical workers. The construction industry is unusual in that section 8(f) of the N.L.R.A. (29 U.S.C. § 158(f)) allows building trades unions to contract with employers in behalf of construction workers who are not yet employed. Section 8(f)(3) of the N.L.R.A. (29 U.S.C. § 158(f)(3)), also allows for the contractual establishment of a hiring hall or a pool of men out of which a union may refer qualified applicants for jobs with particular employers. Unions have a statutory duty to refer both union and non-union workers without discrimination in favor of union members. Teamster Local 357 v. N. L. R. B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961); Local 100 v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed. 2d 638 (1963); 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(2). Thus, all persons who have registered for referral, and who are qualified applicants for jobs with employers in the electrical construction industry of Baltimore, are within the unit represented by Local 24. See McFadden v. Baltimore STA et al. (C.A. No. 71–457–H), oral opinion of Judge Harvey, p. 9 (D.Md. July 7, 1972). As members of the unit, plaintiffs Wedderburn and Coombs are entitled to the same representation granted by Local 24 to union members. Any refusal by Local 24 to refer Wedderburn and Coombs for employment as alleged by plaintiffs (¶¶ 83–84, 102–108 of the complaint) constitutes a breach of the union's duty of fair representation, regardless of whether the refusal to refer was motivated by racial discrimination or discrimination in favor of union members or both. Vaca v. Sipes, *supra*; Hum-

phrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Graham v. Bro. of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

While it is true, as defendant Local 24 points out, that the affidavits of Wedderburn and Coombs indicate that they are presently working for a non-union company, this fact alone does not exclude them from the unit represented by Local 24. As previously noted, a building trades union may bargain in behalf of construction workers who are not yet employed by a contractor which seeks its employees through the union. Wedderburn and Coombs, by alleging that they are competent to perform electrical work as journeymen members of Local 24 and that they have signed the referral book and applied for membership, have easily placed themselves within a group of persons who are available as potential employees of the contractors for whose potential employees Local 24 has a duty of fair representation. The alleged discrimination of Local 24 has injured Wedderburn and Coombs in that they allegedly have been denied referrals or membership in the union for which they have applied and which they would have received in the absence of said discrimination by Local 24 and the other defendants in the electrical trade. Such allegations are enough to allege a case or controversy necessary to establish standing to sue. United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); Baker v. Carr, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962). Cf. O'Shea v. Littleton, 414 U.S. 488, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974); Linda R. S. v. Richard D., 410 U.S. 614, 93 S. Ct. 1146, 35 L.Ed.2d 536 (1973); Indi-

ana Employment Security Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972):

F. *Failure to exhaust proceedings before the EEOC prior to filing suit under Title VII.*

Intervening plaintiff, Eddie Hudson, in his intervening complaint, in addition to the theories espoused by the other plaintiffs, has claimed a right of action against Local 37, 37A, 37B, and 37R, Operating Engineers, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. His complaint alleges that he filed a charge of racial discrimination by Local 37 with the Equal Employment Opportunity Commission (EEOC) on February 24, 1970, and later received a "Right to Sue" letter bearing date of November 9, 1973. The intervening complaint was filed by Hudson in this court on January 3, 1974, well within the 90-day period within which the suit under Title VII had to be filed by virtue of the requirements of 42 U.S.C. § 2000e–5(f)(1).

The Operating Engineers, however, claim that Hudson's suit under Title VII is premature in that the opportunity for conciliation was not exhausted. No invitation by the EEOC was made to Local 37 to conciliate until November 21, 1973, when the EEOC simultaneously issued its determination of probable cause. On November 29, 1973, according to the defendant union, it notified the EEOC it was ready to conciliate.

 The simple answer to the contention of the defendant union is that there is no requirement that the EEOC exhaust conciliation procedures prior to the institution of a suit in federal court by a person who has filed charges with the EEOC under Title VII and who claims to be aggrieved by an act of racial discrimination. Johnson v. Seaboard Air Line R. Co., 405 F.2d 645 (4th Cir. 1968), cert. denied, Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969). In order for a private person aggrieved to file suit, it is only necessary that, within 180 days of the filing of the charge with the EEOC, no suit has been filed by the EEOC and no conciliation agreement has been executed to which the aggrieved private person is a party.[2] These conditions having been met, Hudson had a right to file suit in this court after receiving his "Right to Sue" letter even though defendant union claims that conciliation efforts were not exhausted. Johnson v. Seaboard Air Line R. Co., *supra*; compare Equal Employment Op. Com'n v. Firestone Tire & Rubber Co., 366 F.Supp. 273 (D.Md. 1973), a case involving a suit by the EEOC under Title VII as opposed to a suit by the private person aggrieved.

II

*Motions to Dismiss of Contractor and Subcontractor Defendants*

A. *Standing of plaintiffs to sue contractor and subcontractor defendants.*

1. Tidewater Equipment Company, Inc., and Lloyd E. Mitchell, Incorporated.

The Tidewater Equipment Company, Inc., and Lloyd E. Mitchell, Incorporated, two subcontractor defendants, have not filed motions raising questions of standing. Therefore, the discussion in section II A of this opinion will not relate specifically to those defendants, although the general conclusions of this section II A are applicable.

2. Ehrhardt and May, Inc.; R. E. Linder Steel Erection Company, Inc.; and The Howard P. Foley Company.

Ehrhardt and May, Inc., R. E. Linder Steel Erection Company, Inc., and The

---

2. In addition to the 180-day period, further time, not to exceed 60 days, must be allowed where there is a state or local agency with power to act in discrimination cases. 29 U. S.C. §§ 2000e–5(c), (d), and (f)(1). Since over one year elapsed here between the date of the filing of the charge with the EEOC and the date of the issuance of the "Right to Sue" letter, the additional 60-day waiting time requirement is immaterial.

Howard P. Foley Company are three subcontractor defendants which have filed motions in this case raising the issue of the standing of one or more of the plaintiffs to sue them.[3]

Ehrhardt and May, Inc. is alleged to be a subcontractor doing operating engineers' work in the Greater Baltimore area. It is alleged to employ workers referred to it by Operating Engineers Local 37 and to be a member of Associated General Contractors (A.G.C.), an unincorporated employer association whose membership allegedly controls substantially all of the union contracting work in the area in the operating engineers' trade. Plaintiff Kenneth Lane, a black, is alleged to have attempted to apply to the apprenticeship program of the Operating Engineers JATC and to have been excluded from the apprenticeship program on account of his race.

R. E. Linder Steel Erection Company, Inc. is alleged to be a subcontractor doing work in the ironworkers' trade in the Greater Baltimore area. It is alleged to employ workers referred to it by Ironworkers Local 16 and to be a member of the Steel Erectors Association (S.E.A.), an unincorporated employer association whose membership allegedly controls substantially all of the union contracting work in the area in the ironworkers' trade. Plaintiff Hezekiah Doughty, a black, is alleged to have twice been rejected by the Ironworkers JATC on account of his race, but is alleged to have had minor amounts of training in the ironworkers' craft. Plaintiff Lorenzo Campbell, also a black, is alleged to have skills in the ironworkers trade of a journeyman level, but is further alleged to have been discouraged from applying for membership in Ironworkers Local 16 because of its general reputation for racial discrimination although he desires to have membership therein.

The Howard P. Foley Company is alleged to be a subcontractor doing electrical work in the Greater Baltimore area. It is alleged to employ workers referred to it by I.B.E.W. Local 24 and to be a member of the National Electrical Contractors Association (N.E.C.A.), the membership of the Maryland chapter of which allegedly controls substantially all the union contracting work in the area in the electrical trade. Plaintiffs Wedderburn and Coombs, both black, are alleged to have had long experience in electrical work and to have been denied referrals by, and membership in, Local 24 on account of their race. Plaintiff Nathaniel C. Byrd, also black, is alleged to have been rejected by the Electricians' JATC on account of his race.

There is no allegation that any of the plaintiffs have directly sought employment with nor that they have ever been employed by these subcontractor defendants. The defendant subcontractors claim that the plaintiffs have no standing to sue them because there has been, they say, no allegation of direct discrimination by them against the particular named plaintiffs. It is true that there must be allegations of a specific personalized injury, or threat of real and immediate injury, to the plaintiffs as a result of a putatively illegal action of the defendants in order to satisfy the threshold requirement imposed by Article III of the Constitution that those who seek to invoke the power of the federal courts must assert an actual case or controversy. O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); Linda R. S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); Indiana Employment Security Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973); Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31

3. The Howard P. Foley Company has raised the issue of standing to sue in the context of a motion for summary judgment rather than in that of a motion to dismiss. Since the applicable legal principles are the same in both instances, however, the court will discuss the Foley Company motion together with the motions to dismiss filed by the other two subcontractor defendants.

L.Ed.2d 636 (1972); Golden v. Zwickler, 394 U.S. 103, 109–110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Flast v. Cohen, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 20 L.Ed. 2d 947 (1968). The defendant subcontractors properly contend that a plaintiff who has not been directly harmed by the conduct of another can not repair the deficiency of his claim against that party simply by asserting such a claim in the context of a class action. O'Shea v. Littleton, *supra*; Hall v. Beals, 396 U.S. 45, 48–49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Plaintiffs must "fairly and adequately represent the group for which they purport to speak." Thaxton v. Vaughan, 321 F.2d 474 (4th Cir. 1963).

Plaintiffs, while admitting that they have not applied for employment by, and have not been employed by, the defendant subcontractors in the traditional sense, nevertheless contend that they have in effect attempted to avail themselves of the opportunity to become employed by these subcontractors by virtue of their respective applications to the JATCs or the unions. The system alleged by the plaintiffs is such that, in order for one to become employed by Ehrhardt and May, Inc., R. E. Linder Steel Erection Company, Inc., or The Howard P. Foley Company, one must first become an apprentice or journeyman member of a defendant union and then seek job referrals through the hiring hall of that union.

Specifically, plaintiffs allege, in support of their claim of a unified system of discrimination in each trade spanning the actions in each trade of the respective unions, JATCs, and subcontractors, the following:

1. That the JATCs practice racial discrimination in their admission policies, thus keeping the number of blacks in the programs very low. (See ¶¶s 59–82 of the complaint).

2. That the JATCs are mere agents of the defendant unions and contractor associations, and the contractor associations are composed of named defendant subcontractor members and other subcontractors in those respective trades. (See ¶¶ 31–38, 25–30, 115 and 118 of the complaint).

3. That defendant unions now require unskilled and partially skilled blacks to enroll and complete the unreasonably long apprenticeship programs of JATC defendants before such persons can achieve journeyman rank in the respective unions while such requirements were not imposed upon whites. (See ¶ 79 of the complaint).

4. That defendant unions have restricted their journeymen membership size by practicing racial discrimination in their respective membership policies. (See ¶¶ 91–99 of the complaint).

5. That journeymen members of the defendant unions receive preferential treatment in referral, and that white journeymen members are referred more often than black journeymen members. (See ¶¶ 100–108 of the complaint).

6. That defendant subcontractors participate in the racial discrimination of the unions by knowingly accepting discriminatory referrals and by requesting the referral of white union members. (See ¶¶ 115–118 of the complaint).

7. That defendant subcontractors have, with knowledge of the discriminatory practices of the defendant unions, delegated their responsibility for hiring to the defendant unions such that the subcontractors are required to recruit labor solely and exclusively through the unions. (See ¶ 100 of the complaint).

The allegations, then, are that the defendant unions are essentially employment agents of the defendant subcontractors, and that with the knowledge, approval, and active participation of the subcontractors, the unions practice racial discrimination in every phase of the process leading up to employment.

A number of cases have held that a plaintiff has standing to sue "across-the-board" to eradicate racial discrimination which exists throughout an em-

ployment system even though he has suffered injury from only one part of the system. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970), cert. denied, 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970); Johnson v. Georgia Highway Express, 417 F.2d 1122 (5th Cir. 1969); United Transport Union v. Penn Central, 443 F.2d 131 (6th Cir. 1971). See also, Brown v. Gaston County Dyeing Machine, 457 F.2d 1377 (4th Cir. 1972), cert. denied, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). While it is true that the system referred to in those cases was limited to the operations of only one employer, the principles of those cases apply equally well here where the allegations putatively establish the direct participation of the defendant subcontractors in the discriminatory acts which deprive the plaintiffs of the opportunity to be employed by the defendant subcontractors.

In Thompson v. Lambert Point Docks, et al., 4 F.E.P. Cases 671 (E.D.Va.1971), aff'd 4 F.E.P. Cases 673 (4th Cir. 1972), (not otherwise reported), Judge MacKenzie denied relief, after trial, to plaintiff Thompson on a Title VII class action suit against a freight checkers union and Lambert Point Docks, Inc., the cargo handler, after having made a factual finding that Thompson had never been denied membership in the union, had never applied for membership in the union, and had refused employment by Lambert Point Docks on two separate occasions. In denying relief to Thompson, however, Judge MacKenzie indicated that a proper plaintiff could have asserted a class action under the circumstances against both the union and the potential employer where the potential employer obtained its employees, as here, through a hiring hall referral system. Although Thompson v. Lambert Point Docks, et al. is a Title VII case, the principles relating to standing which apply in such a case are equally applicable to a case such as the present one, as-

serting myriad theories of relief, but all based on the allegation of a systematic scheme of discrimination joined in by all facets of the respective construction trades.

Similarly, in Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967), another Title VII action, the court dismissed the action because the potential private employer, Exide Battery Service, had not been made a party to the administrative proceedings before the EEOC prior to the filing of suit. But the court indicated that the result would have been different if it had been shown that the state employment service, which had been made a party to the EEOC proceeding, was an agent of Exide in the hiring process rather than merely a "go-between" to place the employer and employee in contact after which the latter two would conduct negotiations and make the ultimate decisions in reference to employment. The court stated that the state agency's normal practice was "to assist applicants in securing employment, rendering a screening service for employers, and put employer and employee into contact. The employer then interviews the applicant and does its own hiring. Nothing else appearing, we think such a relationship falls short of that of principal and agent." 377 F.2d at 241. While admittedly not involving a question of standing to sue, *Mickel* does show that the courts will, in a proper case, recognize the realities of the hiring process where the ultimate employer delegates to others the hiring responsibility. See also Ethridge v. Rhodes, 268 F.Supp. 83 (S.D.Ohio 1967).

The court believes, for the foregoing reasons, that the respective plaintiffs have sufficiently alleged personalized injury or threat of injury by the respective subcontractor defendants to survive the motions to dismiss based upon the doctrine of standing.

### 3. Piracci Construction Co., Inc.

The Piracci Construction Co., Inc. is alleged to be a general contractor in the Greater Baltimore area. The only allegations of the plaintiffs against Piracci are that it has "active knowledge that [the unions, subcontractors, and others] have historically engaged and presently engage in the aforementioned discriminatory practices. Nevertheless, defendant [Piracci has] acceded, ratified, participated in, conspired with and encouraged defendants in their discriminatory practices against plaintiffs and their class by maintaining [its] own unintegrated permanent work forces and *by employing the class of defendant subcontractors who engage in the above-described discriminatory hiring practices.*" (Emphasis supplied). (¶ 119 of complaint and ¶ 88 of intervening complaint).

No plaintiff is alleged to have applied for or been denied employment by Piracci. Piracci has not been alleged to have delegated its employment function to the defendant unions nor to any other external organization, group or person. Lacking allegations of specific acts committed by Piracci resulting in damage or threat of injury to plaintiffs, the plaintiffs have no standing to assert against Piracci any of the claims of the amended and intervening complaints, even if otherwise applicable to Piracci, relating to alleged violations of 42 U.S.C. §§ 1981 and 1983, the Thirteenth and Fourteenth Amendments, 29 U.S.C. § 158(b), and Title VII of the Civil Rights Act of 1964. O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed. 2d 674 (1974); Linda R. S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); Indiana Employment Security Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

Therefore, the only possible alleged basis for a cause of action against Piracci is that it is a member of a conspiracy. The only cause of action which the plaintiffs have expressly based upon an alleged conspiracy is that referred to in the Third Claim of the complaint as amended, and the intervening complaint as in violation of 42 U.S.C. § 1985(3).

The amended and intervening complaints contain a vague and conclusory allegation that Piracci conspired with the unions, the subcontractors or others in the discriminatory practices of the defendant unions, JATCs and subcontractors. This allegation is not supported by the allegation of any overt act by Piracci pursuant to the conspiracy except that Piracci employed the defendant subcontractors and maintained its own unintegrated work force. In fact, the allegation that Piracci conspired with others is limited by the allegation that it conspired by (1) employing the defendant subcontractors and (2) by employing its own unintegrated work force. Such acts, however, do not themselves make Piracci a member of a conspiracy. In order for Piracci to be a member of a conspiracy, it must have agreed, expressly or impliedly, with one or more other entities to inflict a wrong or injury upon another. There must have been a single plan, the essential nature and general scope of which was known to Piracci as the object and purpose of the conspiracy, although each conspirator need not have known the exact limits of the plan or the identity of all the other coconspirators. The mere knowledge, however, that the subcontractors discrimated against the plaintiffs does not make Piracci a member of the conspiracy by continuing to employ the defendant subcontractors, nor does the fact that Piracci has no blacks in its own work force make it a coconspirator with alleged unlawful discriminators in the absence of any allegation that Piracci has unlawfully discriminated in the selection of its work force. Neff v. World Publishing Company, 349 F.2d 235, 256–257 (8th Cir. 1965); Hoffman-Là Roche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971).

Piracci not having been sufficiently alleged to be a conspirator, and no direct

connection having been alleged between the alleged damage or injury to the plaintiffs and the alleged actions of Piracci, no case or controversy exists between plaintiffs and Piracci under the complaints as they now stand. O'Shea v. Littleton, *supra.* Therefore, the plaintiffs have no standing to sue Piracci.

B. *Failure to exhaust Title VII remedies.*

Defendant subcontractors, Howard P. Foley Co., Ehrhardt and May, Inc., and R. E. Linder Steel Erection Co., Inc., have claimed that the plaintiffs' admitted failure to exhaust their Title VII remedies before bringing the present action was improper. The subcontractors rely on the same arguments as those set forth by the defendant unions. The subcontractors' contentions with respect to this point are of no more validity than the same contentions of the defendant unions. For the reasons fully discussed in Part I A of this opinion, the subcontractors' motions to dismiss on this ground will be denied.

C. *Failure to state a claim under §* *1983 and the 14th Amendment.*

All of the defendant subcontractors claim that the complaint in the present case does not allege that they operate under color of state law. The defendants rely in large part on the standards of state involvement set forth in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

Plaintiffs' response to the subcontractors' contentions is essentially the same as it was to the contentions of the defendant unions with respect to § 1983. Plaintiffs allege that the joint apprenticeship programs (JATCs) are heavily involved with the state, and that the JATC defendants are mere agents of the defendant unions and contractor associations. (See complaint ¶¶ 31–38). Plaintiffs do not allege, however, that the JATCs act as agents of the subcontractors.

Plaintiffs' second argument with respect to state action is that vast expenditures of public funds go to the defendant subcontractors which perform work on public projects. (See ¶¶ 23, 30, and 44 of complaint). As indicated in *Moose Lodge, supra,* the mere receipt of a benefit or service from the state was not intended by the Supreme Court or Congress to be construed as state action. The majority of cases dealing with plaintiffs' "public money" argument have found expressly or implicitly that the mere receipt of money from the state "without a good deal more" is not enough to make the recipient an agent or partner of the government. *See* Lefcourt v. Legal Aid Society, 445 F.2d 1150 (2d Cir. 1971); Grossner v. Trustees of Columbia, 287 F.Supp. 535 (S.D. N.Y.1968); Leslie v. Philadelphia, 332 F.Supp. 83 (E.D.Pa.1971); Braden v. Univ. of Pittsburgh, 343 F.Supp. 836 (W.D.Pa.1972). As indicated in *Grossner,* the phrase "a good deal more" is to be defined in the context of Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), that is, by a determination of the degree of interdependence, partnership, or agency between the state and the private recipient of state funds. The Court in *Burton* stated that there are no "readily available formulae" to find state involvement and that the particular facts and circumstances of each case must be studied. 365 U.S. at 722, 81 S.Ct. 856. In Simkins v. Moses Cone Mem. Hospital, 323 F.2d 959 (4th Cir. 1963), and McQueen v. Druker, 438 F.2d 781 (1st Cir. 1971), the "good deal more" was the significant public function carried out by each of the respective recipients of state money. In both cases, the recipient was, in effect, an agency of the government. The Fourth Circuit stated in *Simkins* that the receipt of public money was merely one relevant factor in finding state involvement in the recipient's actions. The court emphasized that "we find it significant here that the defendant hospitals operate as integral parts of comprehensive joint or intermeshing state and federal plans or programs designed to effect a proper allocation of

available medical and hospital resources for the best possible promotion and maintenance of public health." 323 F.2d at 967.

In the present case, there are allegations that the State of Maryland deals solely with union contractors in all public contracts over six million dollars ($6,000,000) "despite the state's knowledge that the defendant sub-contractors hire primarily or exclusively from defendant unions which also discriminate against plaintiffs and their class." (See ¶¶ 23, 30, and 44 of complaint as amended). In effect, then, it is alleged that the State knowingly undertakes to perform essential state functions—the construction of public facilities costing in excess of six million dollars ($6,000,000)—in partnership or through the exclusive agency of private entities which practice racial discrimination. Thus, as in *Simkins,* there is "a good deal more" involved in the present case than the mere receipt of public funds. The degree of interdependence between the State and the defendant subcontractors when the latter are engaged in the performance of public contracts is every bit as substantial as that described in Burton v. Wilmington Parking Authority, *supra.* In fact, to the extent that the defendant subcontractors are engaged in a public function—the construction of public buildings— their actions can not be considered private. In this regard, see Ethridge v. Rhodes, *supra,* 268 F. Supp. at p. 88.

> "In a venture, such as this one, where the state as a governmental entity becomes a joint participant with private persons, (for the construction of public facilities) the restrictions of the Fourteenth Amendment apply not only to the actions of the state but also to the acts of its private partners—the contractors—and the state is bound to affirmatively insure compliance with the constitutional provisions."

In short, sufficient state action has been alleged to justify the conclusion that the subcontractors have acted under color of state law, at least when engaged in the performance of public contracts. See Conley v. Gibson, 355 U. S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

D. *Failure to state a claim under § 1985(3).*

For the reasons set forth in Part II A 3 of this opinion, the court has held that no claim has been stated against Piracci under 42 U.S.C. § 1985(3). No further discussion as to Piracci is necessary.

The contentions raised by the defendant subcontractors with respect to the plaintiffs' allegations of a § 1985(3) conspiracy are essentially the same as those raised by the defendant unions. Each of these contentions has been discussed above. It should be noted, however, that the overt acts allegedly committed by the defendant subcontractors are set forth in ¶¶ 40–44, 102, and 114–117 of the complaint. The allegations contained in said paragraphs are sufficiently particular to state a claim under § 1985(3) which will withstand a motion to dismiss.

E. *Failure to state a claim under the 13th Amendment.*

Defendant subcontractors' contentions with respect to plaintiffs' 13th Amendment cause of action have been dealt with in Part I E of this opinion.

### III

*Contractor Associations' Motions to Dismiss*

A. *Failure to state a claim against the contractor association defendants.*

All defendant contractor associations argue that plaintiffs have failed to state a cause of action against them. Plaintiffs have alleged that each JATC is the agent of the particular contractor association in its trade (See ¶¶ 31–36 of complaint). They also have alleged that the respective contractor associations have knowledge of the alleged actions taken by their agents, the JATCs, which discriminate against the plaintiffs and their putative class on account of their race and that the alleged discriminatory

acts [4] of their respective agents, the JATCs, have been ratified and encouraged by the contractor associations (See ¶ 115 of complaint). It is also alleged by plaintiffs that the contractor associations have conspired with the defendant unions and the JATCs "with the intent and effect of denying plaintiffs and their class equal employment opportunities in the challenged trades" (See ¶ 115 of complaint). A final allegation is that the defendant contractor associations have engaged in discriminatory collective bargaining agreements with the respective defendant unions in their respective trades (See ¶¶ 25–29, 115 of complaint).

Defendant contractor associations contend that in the absence of any allegations of specific discriminatory clauses in the collective bargaining agreements negotiated by them, plaintiffs have no valid cause of action against the associations. Defendants cite McFadden v. Baltimore STA et al. (D.Md., C.A. No. 71–457–H), an oral opinion dated July 7, 1972, by Judge Harvey, and Allen v. Pipefitters, Local 208, 56 F.R.D. 473 (D.Colo.1972), in support of their position. The *McFadden* case involved a Title VII action against four defendants, The Steamship Trade Association of Baltimore (STA), Terminal Shipping Co., International Longshoremen's Association (ILA), and Local 953 of the ILA. With respect to the STA, the court found that the plaintiff had not alleged, and could not show, any discrimination against him by STA. Judge Harvey stated that the plaintiff:

"attempts to draw S.T.A. [Steamship Trades Association] into this alleged discrimination [by co-defendant Local 953] because it was a party to the Collective Bargaining Agreement which provides that checkers and tallymen shall be drawn from the checkers and tallymen's local, No. 953. Such a limitation on an employer's right to hire an employee is of course proper in a collective bargaining

agreement and generally is considered to be beneficial to labor. Plaintiff's claim against S.T.A. is therefore based on the contention that the latter should not have bargained with and entered into an agreement with the union because the union discriminated against blacks. If such a charge can be proven, then relief is available against the Union, not against the S.T.A., which has no control over membership requirements of I.L.A. or Local 953.

"In response to this argument, plaintiff claims that S.T.A. is an indispensable party in the absence of which complete relief cannot be afforded. Plaintiff apparently has this view because he is attempting to balloon his right to be in Local 953 into an attack on the entire Collective Bargaining Agreement, a claim which is essentially unrelated to the cause of action he alleges.

"It appears to this Court that complete relief can clearly be afforded plaintiff in this case by correcting the alleged discrimination of Local 953. If this is done, and plaintiff secures membership therein, he will be eligible for the employment he desires. If he were then to be denied such employment by S.T.A. or by a member thereof, perhaps the complicity of S.T.A. could then be shown in some discrimination. But there is now no reason to suspect that full relief could not be obtained by a decree against the unions alone." *McFadden, supra,* at pp. 5 and 6.

The ultimate decision of Judge Harvey in *McFadden* is reported in 352 F. Supp. 403 (1973), and was affirmed *per curiam,* 483 F.2d 452 (4th Cir. 1973).

*McFadden* is not apposite to the factual allegations of the amended and intervening complaints relating to the contractor associations. In *McFadden,* there was no allegation that an agent of the STA had itself committed discriminatory acts with the knowledge and par-

---

4. See ¶¶ 59–66, 68–69, 73, 75–79 of the complaint.

ticipation of the STA. In *McFadden,* there was no allegation of a conspiracy between the STA and the union or others. In the absence of these distinguishing features, the reasoning of Judge Harvey in *McFadden,* with which I agree, would be dispositive of the issue of the liability of the contractor associations. In the presence of these distinguishing features, however, *McFadden* is not persuasive.

Similarly, in Allen v. Pipefitters, Local 208, *supra,* it does not appear that the allegations against the contractor association were based upon any action on its part other than having been a party to a collective bargaining agreement with the union. Under such limited allegations, a dismissal of the contractor association was appropriate. In the present case, however, the allegations against the defendant contractor associations are much more broad.

The liability sought to be asserted in this case against the contractor associations is not based solely upon the fact that racial discrimination has resulted by the actions of the unions under lawful collective bargaining agreements to which the respective contractor associations are parties.[4a] On the contrary, the alleged liability of the contractor associations is based upon their own respective acts vicariously performed by their alleged agents and coconspirators under the doctrines of agency, Adams v. Pate, 445 F.2d 105, 107 (7th Cir. 1971); Martinez v. Mancusi, 443 F.2d 921, 924 (2d Cir. 1970), and conspiracy, Solomon v. United States, 276 F.2d 669, 674 (6th Cir. 1960); Hoffman v. Halden, 268 F. 2d 280, 295–296 (9th Cir. 1959).

*B. Failure to state a cause of action under § 1985(3).*

The defendant contractor associations claim that a cause of action has not been sufficiently alleged against them as alleged members of a conspiracy to deprive the plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985(3).

As explained in Part III A of this opinion, the defendant contractor associations are alleged to have acted through their respective agents, the

---

**4a.** The Steel Erectors Association (S.E.A.) (Paper Nos. 54 and 108) and Associated General Contractors (A.G.C.) (Paper Nos. 55 and 107) have filed affidavits in conjunction with their motions to dismiss. In these affidavits facts are stated tending to refute the plaintiffs' allegations in their complaint that S.E.A. and A.G.C. have any relationship of agency or conspiracy with the JATC in their respective trades. No affidavits, answers to interrogatories, admissions or depositions of which the court is · aware have contained facts at variance with those stated in the affidavits of S.E.A. and A.G.C. nor have there been any allegations to the court's knowledge of specific discriminatory clauses in the collective bargaining agreements negotiated by S.E.A. or A.G.C. The court hereby grants the appropriate plaintiffs 10 days from this date within which to direct the court's attention to evidentiary matters in this case, if any, which they contend create a dispute of material fact under Rule 56, F.R.Civ.P. The S.E.A. and A.G.C. will have 10 days thereafter to respond. Pending later ruling by this court on the motions of S.E.A. and A.G.C., the discussion in Parts III A and B are not meant to apply to those two defendants.

The Mechanical Contractors' Association of Maryland (M.C.A.) and the Sheet Metal and Roofing Contractors Association (Sheet Metal Assoc.) also filed affidavits in connection with their respective motions to dismiss. M.C.A.'s affidavit (Paper No. 35) and the Sheet Metal Assoc.'s affidavit (Paper No. 36) admit that they appoint directors of the JATC in their respective trades but deny that they exercise any control over the directors or the JATC. The plaintiffs, in interrogatory answers, have pointed to specific clauses of the respective collective bargaining agreements which they contend were negotiated by M.C.A. and the Sheet Metal Assoc. with the intent and effect of discriminating against blacks in providing employment opportunities in their respective trades. (See Paper Nos. 128 and 134). Those interrogatory answers also repeat the factual allegation that M.C.A. and the Sheet Metal Assoc. have the relationship of principal and agent with the JATC in their respective trades. At this juncture at least, the court is persuaded that a genuine issue of material fact exists which precludes the granting of the motions of M.C.A. and the Sheet Metal Assoc.

JATCs, in their respective trades, "with the intent and effect of denying plaintiffs and their class equal employment opportunities in the challenged trades" (See ¶ 115 of complaint). These acts are alleged to have resulted from conspiracies between the defendant unions, the JATCs, and the defendant contractor associations in their respective trades. Overt acts have thus been alleged on the part of one or more members of the conspiracy in each respective trade. For these reasons, and those set forth in Parts I C and III A of this opinion, sufficient allegations appear in the amended and intervening complaints relating to a § 1985(3) cause of action to withstand these motions to dismiss.

## IV

### Motions to Dismiss by Trustees of Health and Welfare Funds

A. *Failure to state a claim against the trustees of health and welfare funds.*

The trustees of the health and welfare funds of Local Nos. 37–37A–37B–37R, Operating Engineers; Local No. 48, Plumbers and Pipefitters; Local No. 122, Sheet Metal Workers; and Local 16, Ironworkers have moved· to dismiss the plaintiffs' claim against them. Plaintiffs' only allegation of racial discrimination practiced by the trustees of the various union health and welfare funds is that they participated in and encouraged the discriminatory acts of the other defendants against the plaintiffs and their class " . . . by administering health and welfare benefit trust programs which due to defendants' discriminatory practices benefit qualified Whites working in the challenged trades far more, if at all, than qualified Blacks working in such trades." (¶ 120 of complaint). No specific act of discrimination is charged to have been committed by any of the trustees against any of the plaintiffs or their class. The gravamen of the complaint against the trustees, then, is that they are liable to plain-

tiffs and their class *solely* because they have administered trust programs for certain offending unions and others. No allegation has been made that the trust programs themselves were administered in a racially discriminatory fashion.

If the charge can be proven that the defendant unions and others have discriminated against blacks, then relief is available against those entities which have been proven to have discriminated. No valid reason has been advanced why complete relief can not be afforded, as in *McFadden, supra,* to any plaintiff entitled thereto without the necessity of the presence in this case of the trustees of the respective health and welfare funds who, themselves, have not been alleged to have discriminated.

Lacking allegation of specific acts committed by the trustees of the respective health and welfare funds resulting in damage or threat of injury to the plaintiffs, the plaintiffs have no ˙standing to assert against the trustees any of the claims of the amended and intervening complaints, even if otherwise applicable to the trustees, relating to alleged violations of 42 U.S.C. §§ 1981 and 1983, the Thirteenth and Fourteenth Amendments, 29 U.S.C. § 158(b), and Title VII of the Civil Rights Act of 1964.[5]

Therefore, the only possible basis for a cause of action against the trustees is that asserted in the Third Claim of the complaint, as amended, and in the intervening complaint under 42 U.S.C. § 1985(3).

B. *Failure to state a cause of action under § 1985(3).*

No overt act by the trustees of the respective health and welfare funds of the defendant unions is alleged in ·furtherance of the alleged conspiracy to deprive plaintiffs of their constitutional right to equal protection of the laws under § 1985(3). In fact the allegation that the trustees conspired with others is limited by the allegation that they administered

---

5. See cases cited in Part II A 3 of this opinion.

health and welfare benefit trust programs which benefited qualified whites more than the programs benefited qualified blacks as a result of the alleged discriminatory acts of the respective unions in denying employment opportunities to blacks. The mere acts of administering otherwise nondiscriminatory health and welfare funds, however, do not themselves make the trustees members of the respective alleged conspiracies in the respective challenged trades. In order for the trustees to be members of the respective conspiracies in the respective trades, they must have agreed, expressly or impliedly, with one or more other entities to inflict a wrong or injury upon another. The mere knowledge that the respective unions were unlawfully discriminating against blacks in providing employment opportunities does not make the respective trustees members of the alleged conspiracies in the respective trades. Nor does the mere act of administering health and welfare programs, which were not *per se* discriminatory, with such knowledge, make the trustees members of the alleged conspiracies.[6]

The motions of the trustees to dismiss the claims against them under § 1985(3) will be granted.

### V

*Motions to Dismiss by Joint Apprenticeship Committees*

A. *Failure to exhaust Title VII remedies.*

Defendant JTACs have claimed that the plaintiffs' admitted failure to exhaust their Title VII remedies before bringing the present action was improper. For the reasons fully discussed in Part I A of this opinion, the motion of the JATCs to dismiss on this ground will be denied.

B. *Failure to exhaust state administrative remedies.*

Two of the JATC defendants[7] have urged the dismissal of the complaint on the ground that plaintiffs should have presented grievances to the Maryland Apprenticeship and Training Council before seeking to invoke the jurisdiction of this federal court.

Pursuant to Article 89, § 55, Maryland Annotated Code (1969 Repl.Vol.), the Maryland Apprenticeship and Training Council (Council) adopted, effective September, 1971, a "Maryland State Plan for Equal Employment Opportunity in Apprenticeship." Section 11 of that plan provides that a person claiming to have been the victim of racial discrimination in regard to apprenticeship may file a complaint with the Council. In the event the Council later determines that there is reasonable cause to believe that an apprenticeship program is not being operated in accordance with the "Plan," it must institute proceedings to deregister that apprenticeship program from its approved list and refer the matter to the Attorney General of the United States for the institution of a suit under Title VII of the Civil Rights Act of 1964.

Exhaustion of state remedies is generally not required in actions under the Civil Rights Acts. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Wilwording v. Swenson, 404 U. S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Rivers v. Royster, 360 F.2d 592 (4th Cir. 1966); Hayes v. Secretary, 455 F.2d 798 (4th Cir. 1972). Nothing appears to take this case out of the general rule.

---

6. See cases cited in Part II A 3 of this opinion.

7. Sheet Metal Workers JATC (Paper No. 37).
Plumbers JATC (Paper No. 38).

Neither is this court barred by the doctrine of primary jurisdiction from entertaining the claims of the plaintiffs. The doctrine of primary jurisdiction, while related to the rule of exhaustion in an administrative agency context, is clearly not the same. In United States v. Western Pacific R.R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the Supreme Court explained the difference:

> "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulation scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." 352 U.S. at 63–64, 77 S.Ct. at 165.

It is beyond argument that the procedures established under the "Maryland Plan," pursuant to authority contained in Article 89 §§ 50–56, Maryland Annotated Code, as they relate to the enforcement of federal constitutional rights, are not matters "placed within the special competence of an administrative body." The primary forum for the vindication of federal constitutional rights is the federal judiciary, not the Maryland Apprenticeship and Training Council. Furthermore, the issue before the Apprenticeship and Training Council would be whether the actions of which the plaintiffs complain are in violation of the "Maryland Plan," not of the Federal Constitution.

The doctrine of abstention is equally inapplicable to the instant case. Here the JATCs do not assert that abstention would allow a state court to resolve a question of uncertain state law, thereby avoiding the necessity of deciding a federal constitutional issue. Cf. Wisconsin v. Constantineau, 400 U.S. 433, 438, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Here the exercise of jurisdiction by the federal court will not disrupt a state administrative process since the state administrative process, if invoked, can proceed simultaneously with this case. Cf. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Furthermore, the possible effects of abstention here in terms of delay, expense and irreparable harm to federally protected rights militate against abstention, particularly since abstention as to the JATCs would not eliminate the necessity of proceeding with the exercise of jurisdiction over other aspects of this case against other defendants. Cf. Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 12 L. Ed.2d 377 (1964). Additionally, the underlying federal rights allegedly involved in this case are not ". . . entangled in a skein of state law that must be untangled before the federal case can proceed." McNeese v. Board of Education, *supra*, 373 U.S. at 674, 83 S.Ct. at 1437. If it were determined that there was ground to believe the "Maryland Plan" had been violated, the only power the state agency here involved could exercise would be to refer the matter to the United States Attorney General for the purpose of bringing a suit in federal court under Title VII. The council has no power to "untangle" a "skein of state law" even if any such skein existed. See also Rosado v. Wyman, 397 U.S. 397, 406, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

For all these reasons, the motions to dismiss the claims against the JATCs on the ground of failure to exhaust state administrative remedies will be denied.

C. *Failure to state a claim under §
1983 and the 14th Amendment.*

Defendant JATCs contend that "state action" is not sufficiently alleged as to them to state a cause of action under 42 U.S.C. § 1983 or the 14th Amendment. It is alleged in the complaint, as amended,[8] and in the intervening complaint[9] that the respective JATCs operate under color of state law in that, among other things, their operation is supervised by the State of Maryland. It is further alleged that the respective JATCs have filed Affirmative Action Plans with the Maryland Apprenticeship and Training Council (Council) in which it is stated that their respective programs are under-utilizing blacks.[10]

As stated in Part V B of this opinion, Maryland has enacted a statutory scheme of regulation and supervision of apprenticeship and training programs. Article 89, §§ 50–56, Maryland Annotated Code (1969 Repl.Vol.). The Council, a state body, prescribes the duties of joint apprenticeship committees, and has the responsibility to approve the apprenticeship programs of the JATC defendants. Article 89, § 53(2), Maryland Annotated Code; Manual of Apprenticeship and Training for the State of Maryland, pp. 8, 10. Under Article 100, § 97(e), Maryland Annotated Code (1964 Repl.Vol.), only apprentices whose programs are registered with the Council may be employed on Maryland public works projects. It is expressly alleged in the complaint, as amended, and the intervening complaint that the Council has approved the policies of the JATCs which the plaintiffs contend here are in derogation of their constitutional rights. Under these allegations, the plaintiffs have the latitude to prove that the State of Maryland is "a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961); Public Util. Comm. v. Pollak,

343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952).

Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) is not to the contrary. There the Supreme Court noted that the state liquor board played "absolutely no part in establishing or enforcing the membership or guest policies of the club which it licenses to serve liquor,"[11] comparing that situation with the situation in Public Util. Comm. v. Pollak, *supra,* where, as it is alleged happened here, the regulatory agency had affirmatively approved the disputed practice of the regulated entity.

The allegations of "state action" are at least enough to survive a motion to dismiss. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

D. *Failure to state a claim under §
1985(3).*

The defendant JATCs have asserted that no cause of action has been sufficiently alleged against them under 42 U.S.C. § 1985(3). The overt acts of the JATCs have been alleged in ¶s 59–66, 68–69, 73, and 75–79 of the complaint, as amended, and in ¶s 42–58 of the intervening complaint. The allegations that the respective JATCs have conspired with others in their respective trades to deny plaintiffs equal employment opportunities are found in ¶ 115 of the complaint as amended, and in ¶ 84 of the intervening complaint. For the reasons set forth in Parts I C, III A and III B of this opinion, the motions to dismiss the § 1985(3) claims against the JATCs will be denied.

E. *Failure to state a claim under the
13th Amendment.*

The JATCs' contention that no independent claim has been made out against them under the 13th Amendment is a meritorious one. However, the 13th Amendment provides constitutional sup-

8. ¶ 38.

9. ¶ 14.

10. ¶ 67 of complaint, as amended, and ¶ 43 of intervening complaint.

11. 407 U.S. at 175, 92 S.Ct. at 1972.

port for the § 1981 claims. See Part I D of this opinion.

## VI

### Motion of Lloyd E. Mitchell, Inc. for Summary Judgment

Lloyd E. Mitchell, Inc. moved for summary judgment on the ground that no plaintiff had standing to sue it (Paper 78). The motion has been made partially moot by the dismissal of Lloyd E. Mitchell, Inc. from the case in its capacity as a subcontractor in the steamfitting trade (Paper 189). Lloyd E. Mitchell, Inc. is still a party defendant in its capacity as a subcontractor in the plumbing and gasfitting trade and the sheet metal trade.

The plaintiffs who claim to have been discriminated against in those trades are Ralph Williams in plumbing and Dennis Harlee, Nyne W. Britt, Jr., and Lorenzo Campbell in sheet metal. The depositions of these plaintiffs by Lloyd E. Mitchell, Inc. revealed that (1) none except Campbell had ever heard of Lloyd E. Mitchell, Inc. and (2) none considered they were making a direct claim in this suit against Lloyd E. Mitchell. Campbell stated in his deposition that he did at one time ask for work with Mitchell and that one of Mitchell's foremen asked him to call back later which Campbell did not do. (Campbell deposition, pp. 61–72, 78).

Plaintiff Williams is alleged to have applied to the Plumbers JATC for apprenticeship but to have been rejected as a result of conditions relating to his race. Plaintiff Harlee is alleged to have applied to the Sheet Metal JATC and to have been accepted for the program on the condition that he report for work in Wicomico County, 110 miles away from his home, for the first four years. Harlee, in his affidavit, alleges that the condition imposed upon his acceptance was discriminatory and was imposed solely because of his race. Plaintiff Britt alleges that he applied to the Sheet Metal JATC but was denied admission solely on account of his race.

For the reasons set forth in Part II A 2 of this opinion, the court does not believe that the fact that the plaintiffs may not have applied for employment by the defendant Lloyd E. Mitchell, Inc. in the traditional sense is necessarily determinative in that at least three of the plaintiffs, Williams, Harlee, and Britt, have stated under oath that they attempted to avail themselves of the opportunity to become employed by any subcontractor in the plumbing and sheet metal trades respectively by virtue of their respective applications to the JATCs.

Under the legal theory of plaintiffs' counsel Plumbers Local 48 and Sheet Metal Workers Local 122, and through them their respective JATCs, are the agents of Lloyd E. Mitchell, Inc. in the hiring and training of Mitchell's workers. The plaintiffs have said in their depositions that their claim is against the unions and the JATCs. Only Williams has said that his claim is against all subcontractors in the plumbing trade. But, according to the allegations of the complaints, the actions of the unions and the JATCs of which the plaintiffs complain were performed at least partially as the agents or subagents of the subcontractors in the respective trades.

The plaintiffs here seek injunctive relief as well as damages. The mere fact that they are not personally aware of the identities of all of the subcontractors who allegedly acted through the unions and the JATCs as their agents to deny the plaintiffs equal employment opportunities should not result in a party defendant being dismissed, particularly where that party's presence is necessary or desirable for full relief in the action under the sophisticated legal theories of plaintiffs' counsel which a layman could not be expected to understand. The issues in this case do not revolve about whether or not the plaintiffs knew that Mitchell was discriminating

against them, but rather they revolve about whether Mitchell did in fact discriminate, by its own employees' actions or through the directed actions of its agents or subagents, in the manner alleged in the complaint. At this stage, considering the inferences from facts, alleged under oath, in the light most favorable to the plaintiffs, there is at least some evidence that the plaintiffs sought admission to the respective JATCs which it is alleged conspired with the respective unions and the subcontractors, including Mitchell, in the plumbing and sheet metal trades and which it is alleged acted as agents of the unions to which Mitchell, under the allegations, has delegated its hiring function. As to standing, therefore, there is at least a dispute of material fact based upon the theory of standing set forth in Part II A 2 of this opinion. See Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951).

As to the other ground for the motion of Lloyd E. Mitchell, Inc. for summary judgment, the court believes the motion cannot be granted at this time. The affidavit of John W. Trageser, president of Mitchell, is a general denial of any acts of wrongdoing by Mitchell. It sets forth only ultimate facts and conclusions and not detailed evidentiary facts from which the court can reach its own conclusions. There are facts alleged under oath in plaintiffs' answers to interrogatories which tend to contradict the conclusory statements of Mr. Trageser's affidavit.[12] See, Dawkins v. Green, 412 F.2d 644 (5th Cir. 1969); Pierce v. Ford Motor Co., supra; Green v. Wells, 329 F.Supp. 559 (D.Md.1971).

## VII

### Motion of Operating Engineers Locals for Summary Judgment

Since the motion for summary judgment by Locals 37–37A–37B–37R, Operating Engineers, was filed (Paper 136), the intervening complaint of Hudson has been filed (Paper 179). Intervening plaintiff Hudson has alleged that he is a member of Local 37 and that he has been the victim of racial discrimination by Local 37 in ways specified in the intervening complaint (See ¶¶ 25–33 of intervening complaint). Hudson clearly has standing to sue the Operating Engineers Local.

The motion for summary judgment, however, is based upon the alleged lack of standing by plaintiff Lane to sue the Operating Engineers Local. The point is made by Local 37 that Lane did not personally apply for admission into the Operating Engineers JATC. Lane's affidavit, however, attached to the original complaint in this case clearly states that a L.E.A.P. official on behalf of Mr. Lane did call the office of the Operating Engineers JATC and ascertained that it would be futile for Mr. Lane to apply personally.

In this court's view a futile act was not necessary to be performed by plaintiff Lane in order to give him standing. The factual allegation has clearly been made that Lane was denied acceptance by the Operating Engineers JATC by virtue of a condition with an alleged discriminatory purpose and effect.

It has been alleged in the complaint, as amended, that the Operating Engineers JATC is an agent of Local 37 and that the JATC has practiced racial discrimination to the detriment of the plaintiff Lane. (See ¶¶ 32, 60, 65–82, 115, and 124 of the complaint).

In addition to the foregoing, the rationale applied in Part II A 2 of this opinion is applicable as well to the question of the standing of Lane to sue Local 37.

For all these reasons, the motion of Locals 37–37A–37B–37R, Operating Engineers, whether treated as a motion

12. See Paper 125.

for summary judgment or a motion under Rule 12(b)(1) or 12(b)(2), F.R. Civ.P., must be denied.

## VIII

### Class Action Motions

There are a number of motions pending which relate to the request of the plaintiffs for the certification of the plaintiffs as well as certain of the defendants as representative members of a class. The court wishes to defer action on those motions pending a separation of the issues in this case into sub-issues relating to each respective challenged trade (See Paper 202), and, where necessary, an evidentiary hearing to determine the factual basis of the requests for certification of the various classes under Rule 23, F.R.Civ.P.

## IX

For the use of counsel in charting their future course in this case, a word may be necessary to make crystal clear the effect of the rulings announced in this opinion. The court is of the view that no industry-wide conspiracy in violation of 42 U.S.C. § 1985(3) has been alleged in the complaint, as amended, or in the intervening complaint. As discussed in several of the parts of this opinion, the court has ruled that conspiracies in violation of § 1985(3) have been adequately alleged as to certain groups of defendants in each of the five remaining challenged trades. The court does not consider that the respective conspiracies alleged go beyond the boundaries of the respective participants in the respective challenged trades except that the Baltimore Building and Construction Trades Council is alleged to be a member of each of the five alleged conspiracies. (See ¶¶ 113–114 of complaint).

An order will be entered in due course in accord with this opinion.